Suit by W.J. Boothby and others against Gulf Properties of Alabama, Inc., for injunction. From a final decree dismissing the bill, plaintiffs appeal.
Reversed with directions.
The appellants, as plaintiffs, brought their suit seeking a permanent injunction against the appellee, enjoining the sale of the area hereinafter referred to as "Beach Reserved." Upon bill, answer and testimony the chancellor decreed the equities to be with the defendant and dismissed the bill. Thereupon the plaintiffs appealed the final decree.
The property in dispute stretches 4000 feet between the Gulf Coast Highway and the Gulf of Mexico, and on the south of the highway. The property of the plaintiffs lies across the highway and consists of lots of the subdivision, which lots are on the north side of the highway. The lots sold are within the 4000 feet east and west limits opposite the area in dispute to the south. This subdivision is 18 miles east of Panama City.
The "sales map" used for selling the property indicated the water line only in a general way, reflecting the distance from the water to the highway to be only slightly greater than the width of the highway. It was not marked with any words to indicate the high and low water marks of the beach.
The first plat of the subdivision was recorded in January, 1937, which indicated the highway as abutting the lots of the subdivision on the south and the "area in dispute" was boldly marked "Beach Reserved," with no indication of high and low water marks. This "area in dispute" on this plat was about twice the width indicated as the highway. The dedicatory language of the 1937 plat was as follows:
"Know All Men by These Presents: That the Gulf Properties of Alabama, Inc., does hereby adopt the accompanying as a true and correct plat of their lands as follows: U.S. Lot No. 2 Original Section 11 — Township 3 South — Range 17 West, Bay County, Florida, and do hereby dedicate for public use, all streets, alleys, drives, places on the accompanying plat except easement, power, franchise in and to over and under said streets, alleys, drives, and places. Pipes, wires, and transmission of heat, light, power and water, and further, that a right-of-way three (3) feet wide is *Page 118 
reserved upon rear of each lot for location of utilities including poles, and culverts for wires and pipes, that the subdivision shown, known as `Laguna Beach' is permanently marked on ground by 3" iron pipe monuments in the locations shown on plat and dimensions, angles, and lengths as shown are correct and entirely within boundaries of said tract as above described." (Italics supplied.)
In 1941 a second plat was recorded, which was about the same as "Beach Reserved," but with a change in the dedication words, which were as follows:
"Know All Men by These Presents: That the Gulf Properties of Alabama, Inc., a corporation, * * *:
"* * * do donate and dedicate all streets and alleys as indicated upon said plat to the public use, reserving however the exclusive rights at any and all times hereafter, to construct, maintain, and operate upon said streets and alleys, hereby dedicated, street car lines, electric light lines and poles, and other poles, gas pipe lines, telegraph and telephone lines, water pipes, sewer pipes, and such other public utilities as it, the said dedicator, may elect to construct, maintain and operate in and upon said streets and alleys. Further reservation is also made, that should any of the streets and alleys shown on said plat be hereafter closed, in a legal and lawful manner, as allowed by law, the fee of such closed streets and alleys shall revert to the said dedicator, its heirs and assigns.
"Furthermore, a right-of-way, three (3) feet wide, is reserved upon the rear of each lot for location of utilities, including poles and culverts for wires and pipes.
"The grants and dedications hereby made are subject to the foregoing reservations, and the said dedicator further reserves the right at any time to sell and convey to any person, firm or corporation, the rights hereby reserved unto itself."
In 1946 the defendants caused a plat to be made of the area measuring 4000 feet in length along the south side of the highway and 98 feet in depth in the "Beach Reserved" area above referred to, whereby it proposed to subdivide and sell lots in the "Beach Reserved" area. The 4000 feet was divided into blocks 300 feet in length, with streets between, with one block in the center 600 feet in length.
Numerous witnesses testified as to the representations made in 1936 and 1937 by the President of the vending corporation, to the effect that the area in dispute was dedicated "for a public beach for all the people":
"What assurances did Mr. Lahan give you about that land?
"I requested that my deed go all the way to the water front, I had originally made that request of Mr. Shaeffer, and he said that he could not do it and I kept insisting and he said J.B. will be down Saturday afternoon and to talk to him and see if anything can be done and I did talk to him Saturday afternoon; he said he could not give me a deed that that was dedicated for a public beach for all the people who bought property in the first place and in the second place he wouldn't if he could, because if he give it to me on to the water front some of us might put up a building, a hot dog stand or put a house down there that would ruin the view; you asked me when and I don't know.
 * * * * * *
"No sir, I wanted to buy water front property and I wanted the view and wanted water front property
 * * * * * *
"He simply repeated about the tract of land between the highway and the Gulf being dedicated as a public beach for the benefit of all the property owners out there.
 * * * * * *
"This portion between the road and the Gulf of Mexico was dedicated as a playground or beach and there would be no buildings of any kind would be built upon this portion.
 * * * * * *
"Mr. Lathan told Mrs. Bloom and myself that the property south of the highway, between the highway and the Gulf, was reserved as a beach for the benefit of the property owners of Laguna Beach, *Page 119 
that no dwellings or houses would be built on that part of the beach.
 * * * * * *
"That it was to be reserved as a park and there would be no buildings.
 * * * * * *
"That it would always be reserved as a park, with no buildings.
 * * * * * *
"I talked to Lahan several times that summer, I visited Joel Johnston at Sunnyside and I visited Lahan quite a bit and he got after me to buy a lot and build a house and during the conversation he told me that he had dedicated that and there would never be any houses across the road between the highway and the Gulf in front of lots; I bought the latter part of June, 1939.
 * * * * * *
"He told me across the road there would never be anything built, it was dedicated and that he was going to plant some kind of small trees and he said there would never be anything built across the road; that's my best recollection that he said he was going to plant trees there.
 * * * * * *
"That part I can't tell you his exact words, but the fact was that he was going to have the sand dunes cleared down so we would have a good view of the Gulf and that all the Gulf property between the road and the Gulf was to be used for the benefit of the Laguna Beach property buyers at Laguna Beach and that was very important for us to use that beach because that was the only way we wanted it, was for the beach, and he assured me absolutely that was to be retained for us property owners out there; if that was not his exact words it led up to that and that was part of the sale of the land.
 * * * * * *
"All right we will confine it to Lahan; he said that the deed would only cover that lot as described up to the street or highway and that he could not deed us the property across the street or highway from our lot for the reason that it had been dedicated for the use of all the people who were to be located at Laguna Beach, as a beach and that he could not only do that for us, but would not do it for anyone else.
 * * * * * *
"In substance that he could not or would not deed us the property further than up to the right of the street or highway and that the property on the highway or on the Gulf side of the highway had been dedicated to the people at Laguna Beach as a beach and it would not be permitted to be put to any other use.
 * * * * * *
"Well, he just said on the other side of the highway there would not be anything built and we would just have a beautiful view and we bought it for the view as much as anything else.
 * * * * * *
"He just said you have a front lot and just a nice view to the Gulf and said it was going to be reserved and they would not have buildings on that part of the highway, on the other side of the highway.
 * * * * * *
"He said there was one thing about Laguna Beach that between the highway and the beach there would never be any buildings and that it was dedicated as a park."
There is some denial of such representations; however, when it is considered that the proximity of the lots to the beach of the Gulf was the principal quality of the lots sold; that the plat bore the words "Beach Reserved" for the area in dispute; and that, if the purchasers of the lots were not to have a right of ready access to the Gulf over the area in dispute, they could have been effectively cut off and deprived of the ready access to the beach by this 4000 foot strip of land, it seems clearly established that the promoters of the subdivision should now be enjoined from claiming for private use the area marked "Beach Reserved." The defendant should be estopped to now claim that which he represented before the sales to be for the benefit of the purchasers.
The term "Beach Reserved" is more consistent with an interpretation that such area is reserved as a beach, with the purchasers having the use thereof as they *Page 120 
would have the use of a beach, rather than an interpretation of "Land Reserved," for the sole benefit and use of the promoters. This interpretation is also consistent with the underscored words of the dedicatory language of the first plat recorded in 1937.
The decree appealed is reversed with directions to enter a final decree granting the plaintiffs appropriate relief.
THOMAS, C.J., and CHAPMAN and HOBSON, JJ., concur.
SEBRING, J., agrees to the conclusion.
TERRELL and ADAMS, JJ., dissent.