### POWERS et ux. v. SCOBIE et ux.

Circuit Court, Lake County.

October 12, 1951.

Harry E. Gaylord, Eustis, for plaintiffs.

Zera D. Giles, Leesburg, for defendants.

T. G. FUTCH, Circuit Judge.

In 1924 one Thomas A. Davis owned a spot of good earth in the town of Umatilla in this county. The Florida boom was approaching, and its cyclonic peak could be heard in the distance. Davis, following the footsteps of all others in like circumstances, proceeded to subdivide the "spot" of good earth which he owned into blocks, lots, and streets and reservations. He made a plat of his "spot" showing seventy odd lots in two blocks, divided by a street leading from Rose Street south to intersect what his plat showed as Lake Shore Boulevard. Lake Shore Boulevard crowds the lake shore of Lake Umatilla, but nevertheless the plat shows a strip of land between the boulevard and the waters of the lake marked "reserved." Doubtless what he considered the crowning feature of his plat was the bulge of this street, Palm Court Drive, beginning first at the south lines of lots 34 and again at the south lines of lot 36 in both blocks A and B, .expanding the width to 111 feet. Within this expansion the subdivider saw fit to place an ovalescent plot of ground marked "reserved for palms and flowers," which being properly interpreted, means "reserved for thorns and thistles."

The plat was duly recorded in the public records of Lake County and Davis conducted· an auction sale of the lots. As part of his auction sale chatter he exhibited a copy of the plat and called the attention of prospective buyers to the waters of Lake Umatilla, on which his subdivision offered purchasers lots. Some if not all of the lots were sold at the auction and both plaintiffs and defendants hold title to lots in this subdivision by mesne conveyances from the owner, sold, described and conveyed by the owner and subsequent grantors by reference to the plat above mentioned.

Defendants acquired title to lots in both blocks at the south, or lake end, of the subdivision, sufficient in number to include the "bulge" in Palm Court Drive. Defendants also secured a quitclaim deed from the heirs of Davis, now deceased, to the "bulge," the ovalescent areas within the bulge, Lake Shore Boulevard, and the "reserved" strip along the lake, and proceeded to take possession thereof, over the objections of the plaintiffs. Thus the grease was

knocked out of the skillet, and the whole stove caught fire, resulting in this law suit.

Defendants applied to the town council of Umatilla to formally abandon this property, but it refused, and results were nil—the council would say neither "yea" nor "nay." The defendants then offered the town a quitclaim deed, with a 31 foot strip extending, as they said, Palm Court Drive to the waters of Lake Umatilla, but the council would not accept the deed. Thus, plaintiffs and defendants were left to their own wiles. Defendants proceeded with full possession of the whole tract, including lots 34 in blocks A and B, and south to the edge of the lake.

There is much evidence of acceptance and use of these dedicated streets, by the public and by the town. Evidence of public or official use or acceptance, however, is of no value beyond establishing that the proffered dedication was actually made known to the public and that the location of the areas offered for dedication by the subdivider were plainly marked.

The evidence clearly shows that the defendants had full knowledge of the plaintiffs' objection to the abandonment of the dedicated portions of the subdivision as shown by the plat. The evidence further shows that the defendants were apprehensive of the weakness in their position. They chose, however, to disregard plaintiffs' protests and any rights which the plaintiffs may have had, and proceeded with their plans. Disregarding lot lines, they extended their residence into the street (Palm Court Drive)—to say nothing of the restriction running with the title that no house should be nearer than 20 feet to the street. Defendants chose to stand on the quitclaim deed from the heirs of the subdivider. This quitclaim deed avails them nothing. As a strict matter of law, plaintiffs have the right to the full expanse of Palm Court Drive, the ovalescent tract, as well as Lake Shore Boulevard and the "reserved" strip along the lake shore. See Boothby v. Gulf Properties of Alabama, Inc. (Fla.), 40 So. 2d 117.

Counsel for the defendants have favored the court with a splendid brief citing many authorities—none of which in my opinion are applicable in the instant case. He cites Price v. Stratton (Fla.), 33 So. 644, as setting forth the essential elements of estoppel, and the third headnote for that case is quoted below—

> It is essential to the application of the doctrine that the party claiming the estoppel must have been not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel.

In Roe v. Kendrick, 200 So. 394, our Supreme Court said—

We do not mean to hold that before an adjoining lot owner may maintain his right to have a dedicated space left open for his convenience and enjoy an easement therein, there must be an acceptance by the public of the dedication. His rights in this regard are not dependent upon the acceptance by the public, but before his rights accrue in such easement, it must be clearly and unequivocally shown that it was the intention of the owner to so dedicate.

Most of the Florida cases cited by defendants refer to sets of facts entirely different from those involved in this case. None of them appear to involve situations where the parties derived title from a common source, based on the same plat or subdivision. None of the cases involving estoppel have to do with situations where the parties had equal knowledge of title and condition. The Supreme Court has consistently adhered to the views it expressed on that subject in Price v. Stratton, supra.

This, however, is a court of equity and should render a decision which will cause the least harm to both parties concerned, as well as protect the essential rights of all concerned, as nearly as is possible. Neither plaintiffs nor defendants have seen fit to furnish the court a plat based on an accurate survey to show the exact location of the residence and garage of the defendants, as here involved. A personal inspection of the premises, however, indicates that the following redelineation will be equitable to all parties concerned.

There never was any sound reason for flaring a 31 foot street out to a width of 111 feet with an ovalescent plot for "palms and flowers" somewhere near the center thereof.

I think the west line of Palm Court Drive should be extended as follows:

Run the west line of said drive south from the south-east corner of lot 34 in block A to intersect the north line of Lake Shore Boulevard if extended in a straight line from the southeast corner of lot 40 in Block A to the south-west corner of lot 37 in block B; extend the east line of said drive in a straight line south a distance of 122.3 feet, thence south-east to the south-west corner of lot 37 in block B.

The strips marked "reserved" along the waters of Lake Umatilla and Lake Shore Boulevard should be vacated and made available to the plaintiffs.

Decree will be entered in accordance with these findings.