SHANNON, Judge.
This is an appeal from an order of the chancellor below dismissing the plaintiff’s *758 amended bill of complaint after all evidence was taken. The suit involved the title to two certain parcels of land lying in St. Lucie Estates Subdivision.
The plaintiff-appellant, in her brief and in argument before this Court, has set out four points, but for the purpose of this appeal they may be condensed as posing the following questions:
1. Were the two parcels of land ever dedicated to the public and if so, was there an acceptance of the dedication by the public?
2. If there was a dedication and acceptance of the parcels in controversy, was the City of Stuart estopped by its conduct,, through its officials, from claiming any interest therein?
We are attaching a portion of a diagram of the original plat of St. Lucie Estates Subdivision filed in 1924, showing the particular parcels of land herein involved.

From the plat and from the amended complaint and the evidence, the plaintiff holds title to lots 7, 8 and 9 of Block 9, and one of the defendants, Bittan, owns lot 6 of Block 9. The two parcels of land involved are marked on the plat as A and C. In the final decree the chancellor found that Parcel A was a part of a street called Osceola Avenue and that Parcel C was a parkway, as will more fully appear from a portion of the decree which reads:
“1. That the plat of St. Lucie Estates was duly recorded on December 5, 1924, dedicating various streets and parkways, including Osceola Avenue— which embraced Parcel ‘Á’, and the parkway — being Parcel ‘C’, and that said plat with the dedications thereon was duly accepted.
“2. That the Plaintiff failed to establish that the dedication of Parcels
*759 ‘A’ and ‘C as set out in Plaintiff’s Exhibit 1, had never been accepted or that the said parcels had been legally abandoned.
“3. That Parcel ‘A’, the eighty-foot strip, is a public street or thoroughfare.
“4. That Parcel ‘C’, the fifteen-foot parcel, is a public parkway.
“5. That the Defendant, City of Stuart, shall refund to the Plaintiff all taxes paid by the said Plaintiff on the two parcels of land hereinabove described.
“6. That the Plaintiff has failed to establish the material allegations of her Amended Bill of Complaint for the relief sought and that the Amended Bill of Complaint should, therefore, be dismissed.”
Plaintiff claims the land in question primarily upon a trustee’s deed from the developer and subdivider of the subdivision. The defendants claim that the said strips of land are public rights-of-way.
From the evidence it is shown that the streets in the subdivision were maintained by the defendant city, although the exact time of this is not shown. The particular parcels of land involved have never been improved or maintained by the defendants. It is shown that the parcels of land are covered with trees, shrubbery and lawn, which improvements were placed thereon by the plaintiff or her predecessors in title. The evidence also discloses that Parcel A has been assessed taxes by the defendant city since 1949 and that Parcel C has been assessed taxes by the defendant city since 1942 and that payment of the taxes has been made by the plaintiff or her predecessor in title. In addition, there is in the record' a special warranty deed conveying the two parcels of land to the plaintiff’s predecessor in title, the deed being from tbe trustee of the dissolved corporation of the subdivider. ■ It also appears that the plaintiff’s predecessor in title on April 8, 1942, appeared before the City Commissioners of the defendant city in regard to his improving a portion of the land. We quote from the minutes of the defendant as follows:
“The Commissioners explained to Mr. Irwin that while they personally had no objection to him planting a hedge on the street right-of-way between his property and Krueger Creek and extending from Osceola Avenue to East Fourth Street, which would take in a part of the right-of-way and still leave a 25' right-of-way with the understanding that the hedge would be moved if and when requested, it was impossible to officially grant such permission as the right-of-way is not City property.”
The predecessors in title of plaintiff also appeared on several occasions before the City Commission relative to their abandoning and vacating the said parcels of land. In general, the defendant city did grant permission to the plaintiff or her predecessor in title to use and beautify the said parcels of land. The defendant, Bittan, who owned lot 6, lying just South of the plaintiff’s land, had owned, or his predecessor in title had owned the same since 1924. This lot, which faced on St. Lucie Boulevard, had a SO foot frontage, and by reason of a raise in elevation for a bridge would, if the plaintiff were successful, have some 25 feet usable frontage and no egress or ingress over the parcels of land involved herein. The defendant Bittan had filed a suit which was before the chancellor seeking a mandatory injunction to compel the defendant city to open the street, which was Parcel A, but. upon stipulation the suit was held in abeyance pending the outcome of the instant suit.
On the first point that the plaintiff makes which concerns the dedication to, and acceptance by the public of the two parcels of land, the record is replete with testimony on-both sides of the question, but the chancellor, from the amended complaint, *760 the answer and the testimony, decided the question and we cannot say that in so doing his decision is erroneous.
The plat would indicate the subdivider clearly showed the intention to dedicate by marking in the words “not included” just North of the involved property. If it was not the intention to dedicate the involved property, there is no reason to believe that the words “not included” could not have been just as easily written on the property involved. Insofar as Parcel A is concerned, it very clearly appears from the plat that it is a continuation of St. Lucie Boulevard, and as for Parcel C, it is clearly marked with lines in the plat so as to constitute it a parkway.
In the case of Price v. Stratton, 45 Fla. 535, 33 So. 644, it was held:
“(1) When the owner of a tract of land makes a town plat thereof, laying the same out into blocks and lots, with intervening streets, clearly indicated upon the plat, separating the blocks, and conveys lots with reference to such plat, he thereby evinces an intention to dedicate the streets to public use as such; and his grantees, as against him and those claiming under him, acquire the right to have such streets kept open. This constitutes a complete dedication, and the streets cannot be closed up or obstructed, unless in pursuance of legal authority.”
And again in Indian Rocks Beach South Shore, Inc., v. Ewell, Fla. 1952, 59 So.2d 647, 32 A.L.R.2d 940, our Supreme Court definitely held, as stated in the headnotes, that:
“(1) Filing and recording of subdivision plat showing streets amounts to offer of dedication, which must be accepted by public before revocation or withdrawal of offer in order to complete dedication of such streets as public highways.”
“(4) A recorded island subdivision plat, giving easement to county in streets shown thereon for public highways and definitely showing distinct lines bordering a name ‘place’, running from main street to meander line along ‘narrows’ shown on plat, and bounded by certain numbered lots on each side, constituted offer to dedicate such place as public street.
“(5) A municipality’s acceptance of offer to dedicate some streets shown on platted subdivision constitutes acceptance of offer to dedicate entire system of streets shown thereon, in absence of proof of intention to limit acceptance.”
That the offer of dedication was accepted by the public is, we think, plainly manifested by the use to which Parcel A was subjected by the public, although when the bridge in St. Lucie Boulevard was established the grade of the road made it practically impossible to use Parcel A.
The next point, assuming the dedication and acceptance of the parcels in controversy, is the defendant city estopped by its conduct from claiming any interest therein ? Under this point we have the question of adverse possession and estoppel by conduct.
McQuillin on Municipal Corporations, 3rd Edition, Volume 11, Page 93, Section 30.179, sets out, with reference to adverse possession, the majority rule which obtains in our state, as follows:
“There is much conflict in the decisions as to whether the right to a street or alley may be lost by adverse possession. In a few states such property is looked upon the same as any property held by an individual and the maxim ‘nullum tempus occurrit regi’ is considered not applicable to municipal corporations so far as streets and alleys are concerned, and hence title can be acquired to all or a part of a street by adverse possession, provided the possession is hostile and not merely permissive. Caution is advisable, however, in considering the cases following *761 this view, for in a number of states in which the courts formerly followed this view statutes have changed the rule to accord with the weight of authority. By the great weight of authority it is held in nearly all the states that the right of the public in a street or alley cannot be divested by adverse possession of another for the statutory period, unless the public use has been abandoned by competent authority and the land is held as proprietary property. Nor is it material that the adverse possession is all of the street in question, instead of merely a part thereof.
“ Accordingly, by the weight of authority, title to public streets and alleys cannot be acquired by prescription. Even in those states where the minority rule has prevailed, most of them have enacted more or less recent statutes changing the law so as to conform with the prevailing and modern view; and the enactment of such statutes is within the power of the legislature. However, in some jurisdictions, there are provisions conferring title by adverse possession where a building encroaches on a street for twenty years, in certain cases.”
In Waterman v. Smith, Fla.1957, 94 So.2d 186, 189, in a well-reasoned opinion, Mr. Justice Thomas said:
“(3-5) The basis for the holding that the appellees had the fee simple title to the property not only to the center of the alley but beyond was the adverse possession they are supposed to have exercised, else upon failure of acceptance of the offer of dedication or upon abandonment they would have owned only to the center. Concluding that the alleys were dedicated and accepted as a unit, we approach a solution of the final problem, that is, whether or not the appellees could have obtained fee simple title to a part of the east-west alley by adverse possession. We reach the decision that under the circumstances we have related the appellees could not have become vested with title in fee simple to the property involved; that adverse possession of property held by a city for the use of the public cannot ripen into a prescriptive title. Norrell v. Augusta Ry. & Electric Co., 116 Ga. 313, 42 S.E. 466, 59 L.R.A. 101. According to this authority the obstruction of a street is a public nuisance. Not only is this the nature of an undertaking to acquire a street for private use, but even the failure of the city cannot operate to ‘invest an intruder with title’ to a street. House-Wives League, Inc., v. City of Indianapolis, 204 Ind. 685, 185 N.E. 511. Cf. City of Gainesville v. Thomas, 61 Fla. 538, 54 So. 780.
“Our understanding of the authorities is that title by adverse possession cannot grow out of the use of a street which amounts to an obstruction, -and that this cannot be accomplished so far as the land to the center is concerned much less to the land beyond the center. The citations of cases on the general subject are listed in 2 C.J.S. Adverse Possession § 14.”
On the question of estoppel through conduct, one of the strongest points presented by the plaintiff is the fact that the defendant city collected taxes on the property in question from the plaintiff. That this was erroneously done is quite plain from the evidence, but the chancellor found against the plaintiff upon the testimony, and, as was held by our Supreme Court in City of Miami v. Jansik, Fla. 1956, 89 So.2d 644:
“(3) Fact that city imposed and collected ad valorem taxes on lot, as to which the city claimed a common law dedication, both before and after the alleged dedication, was not necessarily conclusive against the city’s claim of a dedication, but would certainly not aid the city’s case.”
That the collection of taxes was erroneous is plainly shown in the evidence and it *762 was only in recent years that such taxes were assessed against the lots. For approximately twenty years the defendant city did not assess or collect taxes.
It is true that the plaintiff’s predecessor in title did appear before the City Commissioners at a regular meeting to make inquiry concerning the status of the parcels in controversy. At that time he simply requested permission to improve and beautify the parcels with the understanding that should the city at any future time desire a right-of-way through the property, the improvements would be removed. It is true also at that time that he was advised by the City Commissioners that they could not grant the permission requested “as the right-of-way is not City property.” Assuming that the plaintiff’s predecessor in title did not claim the property and simply wanted permission to improve the same by planting trees and lawn thereon, it could not be said that by using the phrase, “the right-of-way is not City property” the Commissioners would set up an estoppel in his favor. Subsequently, during February 1949, the City Commissioners were advised by the City Manager that the plaintiff’s predecessor in title had obtained a deed to the parcels of land “which were formerly a street” and at a continuation of the Commissioner’s meeting held one week later they decided to “take no steps in this matter.” During this time there was apparently a great deal of controversy regarding these two parcels of land, including arguments between the parties as to whether or not the payment of $500 to the trustee of St. Lucie Estates Subdivision was for the purchase of these lands or in reality whether it was an attorney’s fee paid to him to represent the plaintiff’s predecessor in title. The chancellor has ruled, in essence, that on the testimony the plaintiff had not made out equitable estoppel. With his ruling, this Court is in complete agreement.
In Trustees of Internal Improvement Fund v. Claughton, Fla.1956, 86 So.2d 775, 790, where the doctrine of equitable estop-pel was applied, the Supreme Court did approve the following language:
“ ‘ * * * It thus appears that what has been called an equitable estop-pel, and sometimes with less propriety an estoppel in pais, is properly and peculiarly a doctrine of equity, originally introduced there to prevent a party from taking a dishonest and uncon-scientious advantage of his strict legal rights, — though now with us, like many other doctrines of equity, habitually administered at law. * * *
“ ‘ * * * the doctrine has not in equity been limited to cases where there was an actual intention to deceive. The cases are numerous where the party who was estopped by his declaration or his conduct to set up his legal title, was ignorant of it at the time, and of course could have had no actual intention to deceive by concealing his title. Yet, if the circumstances were such that he ought to have informed himself, it has been held to be contrary to equity and good conscience to set up his title, though he was in fact ignorant of it when he made the representation. * * * Nor is it necessary in equity that the intention should be to deceive any particular individual or individuals. If the representations are such, and made in such circumstances, that all persons interested in the subject have the right to rely on them as true, their truth cannot be denied by the party that has made them against any one who has trusted to them and acted on them.’ ”
However, there was in this case no misrepresentation of the facts. The plaintiff and plaintiff’s predecessor in title could have seen, and presumably did see, the plat. That they saw the plat and recognized the fact that the city owned rights to the property herein involved and, recognizing this, they sought to rely on a deed which they then obtained from the trustee of the dissolved St Lucie Estates Subdivi *763 sion, gives credence to the fact that they weil understood and were trying to obtain the property herein.
Affirmed.
ALLEN, Acting Chief Judge, and WARREN, LAMAR, Associate Judge, concur.