283 So.2d 581 (1973)
CITY OF HOLLYWOOD, a Municipal Corporation of Florida, Appellant,
v.
William G. ZINKIL, Sr., As Tax Assessor Broward County, Florida, and Hollywood, Inc., a Florida Corporation et al., Appellees.
No. 71-230.
District Court of Appeal of Florida, Fourth District.
September 25, 1973.
Rehearing Denied October 23, 1973.
*582 Ray H. Pearson, Larry S. Stewart, and Bertha Claire Lee, of Frates, Floyd, Pearson & Stewart, Miami, and B.L. David, Hollywood, for appellant.
Carl A. Hiaasen, of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, and Sherwood Spencer of Ellis, Spencer & Butler, Hollywood, for appellee Hollywood, Inc., etc.
PER CURIAM.
This appeal involves conflicting claims of ownership of two blocks of vacant, unimproved, oceanfront beach land (Block C and Block 205).[1] The instant litigation was commenced in 1964 and since that time various aspects of the litigation have been adjudicated both by this court as well as the Supreme Court.[2]
The Final Judgment under review essentially holds that the appellant, City of Hollywood, is not possessed of any title, ownership, right, easement or interest of any kind in Block C and Block 205 (in effect concluding that such right, title, ownership, etc. was vested in the appellee, Hollywood, Inc.).
Some of the basic facts relating to the chain of title are reflected in an earlier opinion of the Florida Supreme Court, Marshall v. Hollywood, Inc., Fla. 1970, 236 So.2d 114. Suffice it to say that appellee claims that its title to the lands in question was derived from a sheriff's deed issued to Highway Construction Company, which company subsequently conveyed its interest to appellee, as reflected by a deed recorded in 1931. A variety of other circumstances and occurrences since that date, as indicated for example by the lots in question having appeared on the tax rolls of the City as exempt and various requests for admission of certain facts having been previously declared to have been admitted, are urged in support of appellee's claim of ownership.[3]
The City's claim of ownership is also predicated upon various acts and occurrences including but not limited to documentary and testimonial evidence (parts of which are alleged to have been improperly excluded by the trial court) reflecting ownership by virtue of a deed from the *583 original owner and ownership arising by dedication and prescription.
Upon review and consideration of the record we are of the opinion, in light of the applicable authorities, that the trial court erred in rejecting documentary testimonial evidence bearing upon the City's claim of ownership by dedication. (Examples of the type of evidence excluded are set forth below.)[4]
In City of Palmetto v. Katsch, 1923, 86 Fla. 506, 98 So. 352, 353, the Supreme Court of Florida, speaking through the late Mr. Justice Terrell, defined "common-law dedication" setting forth the essential elements and acts giving rise thereto as follows:
"... a `common-law dedication' is the setting apart of land for public use, and to constitute it there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the land to the public use, and an acceptance by the public of the dedication. This seems to be the general rule, and whether an express or an implied dedication is relied on, the intention of the owner to set apart the lands for the use of the public is the foundation and essence of every dedication. ...
"The act of dedication is affirmative in character, need not be by formal act or dedication, may be by parol, may result from the conduct of the owner of the lands dedicated, and may be manifested by a written grant, affirmative acts, or permissive conduct of the dedicator. In fact, any manner in which the owner sees fit to indicate a present intention to appropriate his lands to public use meets the requirement of the law.
"The means generally exercised to express one's purpose or intention to dedicate his lands to the public use are by a (1) written instrument executed for that purpose; (2) filing a plat or map of one's property designating thereon streets, alleys, parks, etc.; (3) platting one's lands and selling lots and blocks pursuant to said plat indicating thereon places for parks, streets, public grounds, etc.; (4) recitals in a deed by which the rights of the public are recognized; (5) oral declarations followed by acts consistent therewith; (6) affirmative acts of the owner with reference to his property, such as throwing it open in a town, fencing and designating streets thereon; (7) acquiescence of the owner in the use of his property by the public for public purposes.

*584 "As stated by McQuillan, a dedication by use for public purposes occurs only where it clearly appears that the use is with the knowledge and consent of the owner, or without his objection, and under such circumstances as fairly to give rise to the presumption that the owner intended to dedicate to such use. And mere uses by the public, although long continued, should be regarded as a license only, revocable at the pleasure of the owner, where it does not appear that any public or private interests have been acquired upon the faith of the supposed dedication, which would be materially impaired if the dedication were revoked." (Emphasis added.)
See also Seaboard Air Line Ry. Co. v. Dorsey, 1932, 111 Fla. 22, 149 So. 759.
The evidence which was rejected related to each of the categories enumerated in City of Palmetto v. Katsch, supra. The evidence, additionally, had a direct bearing on the question of acceptance of dedication. The acceptance of a dedication may be by formal action of the proper authorities[5] or it may be by public user. Robinson v. Town of Riviera, 1946, 157 Fla. 194, 25 So.2d 277; Laube v. City of Stuart, Fla.App. 1958, 107 So.2d 757; 10 Fla.Jur. Dedication § 18, footnote. As the late Justice Terrell pointed out in City of Miami v. Jansik, Fla. 1956, 89 So.2d 644, 645:
"This court is committed to the doctrine that the act of dedication is affirmative in nature and need not be done by formal act but may be done by parol, may result from the the conduct of the owner or may be manifested by written grant, affirmative acts or the permissive acts or the permissive conduct of the dedicator... ." (Emphasis added.)
See also Smith v. City of Melbourne, Fla. App. 1968, 211 So.2d 66.
To reiterate, the excluded evidence directly related to the issue of the dedicator's intention to dedicate and the mode and manner of the acceptance of such dedication as to both Block 205 and Block C. The City, therefore, should be afforded the opportunity of presenting evidence on the issue of common law dedication and the trial court should give due consideration thereto. Cf. Boothby v. Gulf Properties of Alabama, Fla. 1948, 40 So.2d 117.
In considering the evidence bearing upon the issue of common law dedication consideration must also be given to the legal effect of the 1927 deed executed by appellee's predecessor in title in favor of the City as such deed may relate to Block 205. The City sought to introduce the deed and other extrinsic evidence to establish that the conveyance of "walks" and "parkways" referred to in the deed was intended by the owner thereof to be a conveyance of Block 205. Whether the City would have been successful in proving what the grantor's intention was with respect to the use of the word "parkway" does not determine the question of admissibility of the deed and consideration of extrinsic evidence. Extrinsic evidence such as parol evidence is permissible to explain ambiguities in a written instrument, particularly where such ambiguity is "latent" as distinguished from "patent". Routh v. Williams, 1940, 141 Fla. 334, 193 So. 71; Carson v. Palmer, 1939, 139 Fla. 570, 190 So. 720; Connelly v. Smith, Fla.App. 1957, 97 So.2d 865; Paradise Beach Homes, Inc. v. South Atlantic Lbr. Co., Fla.App. 1960, 118 So.2d 825; Wise v. Quina, Fla.App. 1965, 174 So.2d 590; Burgess v. Pine Island Corporation, Fla.App. 1968, 215 So.2d 755; Drake v. City of Fort Lauderdale, *585 Fla.App. 1969, 227 So.2d 709. The ambiguity in the 1927 deed was a latent ambiguity; therefore, the trial court erred in excluding the deed as well as the extrinsic evidence relating thereto.
In concluding that the trial court erred in excluding evidence bearing upon the issue of common law dedication, which in and of itself would support a reversal, we have not overlooked the trial court's determination adverse to the City of their claim of ownership by prescriptive use of the lands in question. At the time of the final judgment below the trial court did not have the benefit of the recent decision of the First District Court of Appeal in City of Daytona Beach v. Tona-Rama, Inc., Fla.App. 1972, 271 So.2d 765, which we feel has a significant relationship to the City's claim of prescriptive ownership. Upon remand the trial court should consider the decision in Tona-Rama and its applicability to the facts in the case sub judice. See also Zetrouer v. Zetrouer, 1925, 89 Fla. 253, 103 So. 625; Zetrouer v. Zetrouer, 1928, 95 Fla. 976, 117 So. 383; Dade County v. Snyder, 1939, 140 Fla. 135, 191 So. 185.
We have also considered the contentions of the appellee with respect to the legal effect of those matters which were deemed admitted by virtue of the City's failure to comply with Rule 1.370(a), 30 F.S.A. The trial court's determination that the City failed to comply with Rule 1.370 was affirmed by this court, with certiorari being denied by the Supreme Court. See footnote 1, supra. While we agree that the legal issues involved in the prior adjudications are "no longer open for discussion or consideration" in terms of whether such decisions were correct or erroneous we are of the opinion that these decisions were neither conclusive nor dispositive of the question of the City's claim of ownership of Blocks 205 and C predicated upon common law dedication and prescription. See Graham v. Eisele, Fla.App. 1971, 245 So.2d 682; City of Miami v. Bell, Fla.App. 1971, 253 So.2d 742. See also Canella v. Bryant, Fla.App. 1970, 235 So.2d 328. The legal effect of those matters which were deemed admitted should be evaluated in light of the City's evidence on the question of ownership predicated upon dedication and prescription. The admissions cannot be considered in isolation nor are they deemed to be conclusive of the legal issues involved herein.
Although we have not commented on each and every point raised by the parties in support of their respective positions, we have carefully reviewed the contentions of the parties in reaching our decision. In light of the foregoing, the final judgment is reversed.[6]
Reversed.
OWEN, C.J., and WALDEN and MAGER, JJ., concur.
NOTES
[1] A determination of the complex and vital issues involved in this appeal was not furthered by the inappropriate comments made in appellant's brief reflecting upon the conduct, character and integrity of the trial court. Such comments have no place in the appellate disposition of a justiciable controversy and counsel should be admonished that the court does not countenance such conduct.
[2] Hollywood, Inc. v. Markham, Fla.App. 1966, 182 So.2d 503, cert. den. 188 So.2d 815; City of Hollywood v. Central Council of Improvement Associations of Hollywood, Inc., Fla. App. 1970, 232 So.2d 769, cert. den. 238 So.2d 111; City of Hollywood v. Zinkil, Fla.App. 1970, 235 So.2d 70.
[3] With particular regard to the claim of ownership by virtue of the assessment and collection of taxes, see Laube v. City of Stuart, Fla. App. 1958, 107 So.2d 757. Additionally, in 1945 appellee wrote a letter to the appellant stating its claim of ownership of the lots in question notwithstanding its consent to the public to utilize the areas for ocean bathing purposes.
[4] (a) Pamphlets and magazines produced by J.W. Young, President of Homeseekers Realty Corporation, the original developer of Hollywood, containing stories and advertisements praising the City of Hollywood and its numerous assets, including the miles of municipally owned and free beach; (b) various pamphlets and brochures published by the Hollywood Chamber of Commerce extolling the virtues of the City of Hollywood including the seven miles of oceanfront, "one of the finest and longest municipally owned beaches in America ...", and further stating that the beach was "forever dedicated to the pleasure of the people"; (e) a 1957-58 Annual Report of the City which included statements concerning the seven-mile Hollywood beach and various projects for its improvement; (d) an industrial index of the City of Hollywood referring to a seven-mile public beach under its recreational facilities; (e) newspaper advertisements by J.W. Young and/or Homeseekers Realty, virtually all of which mentioned the advantages of the oceanfront and public beach. These advertisements covered the period between January 16, 1923 and September 6, 1925; (f) statements by purchasers and salesmen concerning the intent of J.W. Young to dedicate the beach to the public. See Boothby v. Gulf Properties of Alabama, Fla. 1948, 40 So.2d 117. The court did allow the testimony of one salesman, Clarence Moody, who testified that Young made numerous statements to him concerning the fact that the City of Hollywood would not be the same as the City of Miami Beach where the public was cut off from the beach but that this beach would belong to the public. In its final judgment the court stated that the law of Florida excluded all oral declarations, newspaper advertisements, brochures and the like in cases involving a valid offer of dedication.
[5] A deed executed by the appellee's predecessor in title in favor of the City purportedly dedicating Block 205 was accepted by the City and is evidenced by a resolution adopted in 1927. Appellee, however, contends that the city charter required that the City signify its acceptance by the adoption of an ordinance. The deed with respect to Block 205 is more fully discussed, infra.
[6] We have considered and rejected the City's claim for a jury trial in light of the language contained in, F.S., Section 65.061, F.S.A. See also Albury v. Drummond, 1928, 95 Fla. 265, 116 So. 236. The City has failed to demonstrate that it is a "defendant ... in actual possession" so as to give rise to a trial by jury.