**CITY OF MIAMI BEACH, a municipal corporation of Florida, v. UNDERCLIFF REALTY & INVESTMENT COMPANY, a New Jersey Corporation, et al.**

21 So. (2nd) 783            January Term, 1945

April 13, 1945            Division A

Rehearing denied May 8, 1945

*Bertram R. Coleman* and *Ben Shepard,* for appellant.

*E. L. Lockhart,* for Ocean & Inland Company, *W. W. Zinmaster,* for Dort Burr Bigelow and *H. N. Boureau,* for Gerard Limnander de Nieuwenhove and Jacqueline de Nieuwenhove, his wife, appellees.

BUFORD, J.:

On November 15, 1940 the City of Miami Beach exhibited its bill of complaint in the circuit court against several named defendants seeking a decree establishing a dedication to the perpetual use of the public the following described property:

"(a) A drive 30 feet wide extending along the eastern boundary of blocks 1, 28, 29, 55, 56 and 77, hereinafter referred to as 'the drive,' and

"(b) A plot or strip of land extending entirely between the easterly line of said drive and the waters of the Atlantic Ocean, bounded on the north by the north line of Lot 6 of Block 1 extended to the highwater line of the Atlantic Ocean and on the south by the south line of lot 1 of Block 77 extended to the high water line of the Atlantic Ocean, which strip will be referred to as 'the beach'."; and also praying injunction against the several defendants and all persons claiming by, through or under them "from claiming or pretending to have the exclusive ownership of said drive and beach and from exercising any exclusive rights in and over said drive and beach from interfering in the use thereof by the members of the public for the purposes hereinbefore alleged and from molesting members of the public from their said rights and privileges and from interfering and obstructing any other agents of the plaintiff in their official capacities from maintaining their same rights and privileges of members of the public in and over said drive and beach," and further prayed "that on final hearing the Court will decree that the obstructions on the drive and beach are unlawfully there and will require the defendants forthwith to move all obstructions on the drive and beach so that the public may use said drive and

beach without hindrance for the purposes for which they were dedicated."

Answer and replications were filed and issues joined. The respective answers prayed affirmative relief by way of injunction.

On application and agreement by parties under the provisions of Chapter 56 Fla. Statutes 1941 (same F.S.A.), the Honorable Vincent C. Giblin was appointed referee by order of court dated the 1st day of May, 1943.

On June 23, 1943, amended bill of complaint was filed amending the description of the lands involved.

On the issues being made up voluminous testimony was presented by the respective parties.

In the final decree the referee stated the contention of the parties, the basis for the respective contentions, his conclusions as to what facts the evidence established, his finding of facts and decreed, inter alia, as follows:

"For convenience, the first of the mentioned strips will be referred to hereinafter as 'the drive' and the second 'the beach.'

"It is the plaintiff city's contention that by filing the plat for record in 1914 the Alton Beach Realty Company (which was then the owner in fee simple of the subdivided property) offered to dedicate the drive and the beach to the perpetual use of the public.

"The plaintiff municipality was organized in 1915 pursuant to the applicable and governing general laws; and was incorporated in 1917 by a special act of the Legislature.

"It is admitted that there has never been a formal acceptance by the plaintiff city of the alleged offer to dedicate the drive or the beach; but it is contended that the alleged offer was accepted by the public by and through its use of the drive and the beach.

"In 1917 or 1918 the Alton Beach Realty Company, the owner of the subdivision, instituted the practice of placing obstructions at the eastern ends of the several streets which led to the drive. The obstructions prevented vehicular access to the drive or the beach. They consisted of 'wooden horses' to which were attached signs giving notice that the drive was

a private road and that it was closed to the public. On at least one day in each year, until about 1924, the obstructions and signs were placed at the street ends. Permanent obstructions were placed at the street ends about 1924. Nothing was done by the plaintiff city or by any member of the public to prevent the placing of the obstructions or to effect their removal.

"Beginning in 1923 and continuing thereafter until after the commencement of this suit, the plaintiff city assessed, levied and collected ad valorem real estate taxes on the drive and on the beach. Initially the assessment and levy were on the property in its entirety as the property of the Alton Beach Realty Company. It was described on the tax rolls as 'a certain tract or strip of ocean front property, bounded on the north by the south property line of the ocean front property of the Miami Beach Improvement Company, produced eastwardly to the high water mark of the Atlantic Ocean, said plat being recorded in plat book No. 5, at pages No. 7 and No. 8, public records of Dade County, Florida, on the east by the Atlantic Ocean, on the south by the north property line of the tract known as the Whitman tract and on the west by the east line of blocks 1, 28, 29, 55, 57, and 77 of Fisher's First Subdivision of Alton Beach, recorded in plat book No. 2, at page 77, public records of Dade County, Florida, amounting to approximately 12 acres, more or less." The quoted description is a description of the drive and the beach involved in this litigation, *and includes no other property.* For the year 1924 the plaintiff city levied and collected taxes on the property of $765; for the year 1925, $1512; and for the year 1926, $1974. The assessment roll for the year 1924, as shown by a certificate thereto appended, was examined by the several members of the city council and was certified by them as correct.

In 1923, the year in which the plaintiff city began to assess and levy taxes on the drive and the beach, a representative of the subdivision owner appeared before the city council and directed the attention of the counsel 'to the fact that the tier of lots fronting on the private drive along the ocean in Alton Beach from the Alton Beach wall on the south to the ocean

front property of the Miami Beach Improvement Company on the north had been assessed on a similar basis as ocean front lots carrying riparian rights,' and he asked 'that some reduction be made on account of the fact that these lots did not carry riparian rights, but that the strip of ocean front in Alton Beach was retained by the Fisher interests (the Alton Beach Realty Company).'

"In later years the property (the drive and the beach) was divided into parcels which were assessed as the property of the upland proprietors who had acquired the ocean front lots in the subdivision.

"In 1932 and in subsequent years there were added to the descriptions on the tax rolls the words 'less any part of that tract dedicated (for public use for any purpose whatever.' If, however, as the plaintiff city now claims, the drive and the beach had been dedicated to the use of the public,) no taxes should have been collected on any part of the property. The conclusion is inescapable that the collection of taxes was inconsistent with the plaintiff city's present position that the property had been previously dedicated to the use of the public.

"On February 26, 1941, (several months after the institution of this suit) one of the solicitors of record for the plaintiff city called the attention of the city council to what he termed 'our inconsistent position' in claiming that the drive east of this property and the beach east of said drive are both public and yet continuing to assess and collect taxes on this public property.' The attorney expressed to the council his thought 'that the city could certainly better its position in this litigation if we proceed at once to void the current year's assessments on this property and discontinue its. assessment hereafter.'

"The council, adopting the suggestion of the attorney, unanimously ordered 'that the 1940 assessments of all this property east of the east lot line of Fisher's First Subdivision of Alton Beach, north of the center line of 15th Street extended easterly be voided and that any payments already received on same be refunded; also that the tax assessor be instructed to discontinue the assessment of this property in

the future until further instructed.' No action was taken as to the taxes collected for the years 1923 to 1939. The proferred refunds have not been accepted by the defendant owners.

"The late Carl G. Fisher, who owned practically all of the capital stock of the Alton Beach Realty Company and who dominated and controlled business and affairs, built a home (in which he lived for many years) on the ocean front at the foot of Lincoln Road in the subdivision. The home was constructed about 1914. He also built a pier in front of his home. The pier extended into the ocean. To prevent the use by the public and to evidence his claim of private ownership, Fisher placed, at the entrance to the pier, a gate which he kept locked.

"On September 18, 1926, a violent tropical hurricane struck Miami Beach. The roadway which had been constructed and maintained by the Alton Beach Realty Company along the thirty foot strip was completely destroyed. The palm trees, grass and shrubbery which had theretofore bordered the roadway were uprooted and swept away. The physical inspection made by the undersigned referee (accompanied by counsel) revealed that the hurricane had destroyed every vestige of the drive. Where formerly it had been there is now only beach sand. No effort has been made to restore the drive since its destruction in 1926 and it has not been shown that its restoration has been planned, considered or contemplated. It's restoration would involve the expenditure of large sums of money. Since the 1926 hurricane it has been impossible for the public to use, as a drive or street, the property allegedly dedicated for public use as a drive. It is not possible to drive over soft and shifting beach sands.

"Fisher had constructed a substantial wall along the east line of the property on which he erected his home. The action of the tide and the waves has extended the beach to a distance of thirteen feet west of the line on which the wall was constructed.

"During the period of its existence the plaintiff city expended no money for the maintenance of the drive. The cost

of its construction and maintenance was borne by the Alton Beach Realty Company.

"At one time Uly O. Thompson owned Block 77 of Fisher's First Subdivision of Alton Beach. The block is at the southern end of the subdivision. The plaintiff city instituted condemnation proceedings to acquire a right-of-way through Block 77 for the purpose of connecting Ocean Drive with Collins Avenue. Because of the non-payment of taxes assessed by the plaintiff city against the property (the drive and the beach) lying directly east of the east line of Block 77, a tax certificate had issued and was held by the City. Thompson wished to acquire the title to the property covered by the tax certificate. An amicable adjustment was made between him and the city. The latter acquired the right-of-way in the 'friendly' condemnation proceedings and a tax deed to the property he desired was obtained by Thompson. In other words, the plaintiff city, by tax deed, conveyed to an individual for private purposes a substantial part of the property which the city now asserts had been dedicated to the perpetual use of the public. The property conveyed to Thompson by the plaintiff has been used, since the conveyance, for exclusively private purposes; and the owners of the ocean front lots in Block 77 were not made parties defendant to this suit.

"The upland proprietors who have been made parties defendant have acquired the legal title to the property lying between the east line of their respective lots and the high water line of the ocean. They deny that the property is subject to the public easements which the plaintiff seeks to establish.

"Along the ocean front in Fisher's First Subdivision of Alton Beach there have been constructed in recent years, at enormous cost, a number of modern hotels. The upland owners of the ocean front lots north of Seventeenth Street have restored the beach to its pristine width by the construction of bulkheads and groynes. The cost of constructing the bulkheads was borne by the property owners, while the city paid the cost of constructing the groynes. The use of the property involved in this litigation for private purposes is of

tremendous value to the upland proprietors. To deprive them of such use would seriously depreciate the market value of their holdings and would materially diminish the revenue enjoyed by the ocean front hotels. Many patrons have been attracted to such hotels because of the private character of the beach to which the hotel guests have access and because of the cabanas and other facilities provided by the hotels.

"Assuming, but not deciding, that the Alton Beach Realty Company, by filing for record in 1914 the plat of its subdivision, offered to dedicate the drive to the perpetual use of the public, and that thereafter there was such use of the drive by the public as to constitute an acceptance of such offer, the circumstances revealed by the evidence (some of which have been herein pointed out) demand the application of the principles of estoppel. Furthermore, in the opinion of the referee, the evidence clearly shows that the plaintiff city and the public unquestionably abandoned and relinquished some years ago the right, if it ever existed, to the use of the thirty-foot strip as a drive or street.

"As to the beach, there is in the referee's mind no doubt that there was no offer to dedicate it to public use by the subdivision owner's filing of the plat.

"The property platted (as is shown by a copy of the plat introduced in evidence as the plaintiff's exhibit 2) does not embrace the beach. The eastern boundary of the subdivision is the east line of the thirty-foot strip.

"The dedicatory language appearing on the plat is: 'That said Company does hereby dedicate to the perpetual use of the public, the streets, avenues, drives and alleys as shown by said map, reserving unto the said company, its successors and assigns, the reversion or reversions thereof, or of any part thereof, whenever discontinued by law.' Nothing was said as to the beach. Even if the platted property had included the beach, it could not be successfully claimed that the beach is a street, avenue, drive or alley.

"There is not sufficient evidence, in the referee's opinion, to establish a prescriptive right to the use of the beach by the public. It is true that in the earlier days preceding the remarkable development of Miami Beach, when it had a small

population, many persons used the beach for bathing, sunning and other recreational purposes. The fact that the upland owners did not prevent or object to such use is not sufficient to show that the use was adverse or under a claim of right. It has not been shown that there has been an open, notorious, continuous and uninterrupted use of the beach by the public, in derogation of the upland proprietors' rights, for a period of twenty years, or for any period.

"The referee has concluded that the plaintiff city has failed to prove the material allegations of its bill, as amended, and that the defendants by whom counterclaims were filed have proved by competent evidence the material allegations of their several counterclaims; and that, therefore, the equities of the cause are with the several defendants.

"Because of the nature and character of the suit, no relief can be granted the plaintiff city even against the defendants against whom decrees pro confesso were entered.

It is accordingly Ordered, Adjudged and Decreed as follows:

"1. That the plaintiff's bill of complaint, as amended, be, and it hereby is dismissed, with prejudice, at the plaintiff's cost.

"2. That the plaintiff city, and each and all of its officers, agents, servants and employees, and the members of the public, as such, be, and they hereby are, and each of them hereby is, pereptually enjoined and restrained from using or attempting to use, as a drive or street, that certain strip of land, approximately thirty feet in width (shown on that certain plat of Fisher's First Subdivision of Alton Beach recorded in plat book 2, at page 77, of the public records of Dade County, Florida), extending along the eastern boundary of blocks 1, 28, 29, 55, 56, and 77 of Fisher's First Subdivision of Alton Beach according to the said plat; and from claiming, representing, asserting or pretending that the plaintiff city or the public has or is entitled to any easement in, on or over the said strip in this paragraph described or any right to the use of such strip as a drive or street.

"3. That the plaintiff city, and each and all of its officers, agents, servants, and employees, and the members of the

public, as such, be, and they hereby are, and each of them hereby is, perpetually enjoined and restrained from using or attempting to use, as a walkway or promenade, or as a means of ingress and egress to and from the Atlantic Ocean, or for recreation or sunning, or as a public bathing beach, that certain strip of land extending between the eastern boundary of the strip mentioned and described in the preceding paragraph numbered 2 and the waters of the Atlantic Ocean, bounded on the north by the north line of lot 6 of Block 1 (of the above mentioned subdivision) extended to the high-water line of the said ocean and on the south by the south line of lot 1 of Block 77 (of the said subdivision) extending to the high water line of the said ocean; and from claiming, representing, asserting or pretending that the plaintiff city or the public has or is entitled to any easement in, on or over the said strip in this paragraph described or any right to the use of such strip as a walkway or promenade, or as a means of ingress and egress to and from the Atlantic Ocean, or for recreation or sunning, or as a public bathing beach.

"4. That jurisdiction of the cause be, and it hereby is, retained for the purpose of determining, assessing and taxing the costs of the cause (including the compensation of the undersigned referee of his duties, in accordance with that certain order made herein on May 1, 1943, by the Honorable Paul D. Barns, one of the Judges of the Court, and recorded on May 3, 1943, in Chancery Order Book 655, at page 96, of the records of the Court); and for the purpose of enforcing the payment of such costs."

The record amply sustains the findings of the referee and the judgment and decree based thereon should be affirmed on authority of our opinion and judgment in the case of Miami Beach v. Miami Beach Improvement Company, 153 Fla. 107, 14 So. (2nd) 172, and cases there cited.

So ordered.

Affirmed.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.