271 So.2d 765 (1972)
The CITY OF DAYTONA BEACH, a Municipal Corporation Organized and Existing under the Laws of the State of Florida, et al., Appellants,
v.
TONA-RAMA, INC., a Florida Corporation, et al., Appellees,
v.
The STATE of Florida, Intervenor.
No. P-335.
District Court of Appeal of Florida, First District.
August 31, 1972.
Rehearing Denied January 23, 1973.
*766 Isham W. Adams, Daytona Beach, for appellants.
Anthony J. Grezik, of Grezik & Johnson, Daytona Beach, for appellees.
Robert L. Shevin, Atty. Gen., and Barry Scott Richard, Asst. Atty. Gen., for intervenor.
WIGGINTON, Judge.
Appellants seek review of a summary final judgment rendered in an action brought by appellees for declaratory and injunctive relief. It is contended on appeal that the pleadings, affidavits, depositions, exhibits, and other evidence in the file create genuine issues of material facts which may be resolved only upon a trial of the cause and not disposed of summarily by the judgment rendered herein.
The primary issue delineated by the pleadings calls for a judicial declaration as to the ownership of a parcel of land forming a part of the Atlantic Ocean beach and consisting of the soft sand area lying easterly of the established bulkhead line paralleling the beach on the west and the mean high water mark of the ocean which forms the border of the soft sand area on the east. The parcel in question is approximately 150 feet deep east and west and is adjacent to and southerly of an existing pier extending into the ocean. The soft sand area of the beach does not support vegetation and, although not normally covered by tidal action of the ocean, is occasionally covered by the sea during hurricanes, northeastern windstorms and extreme high tides.
As the purported record title owner of the parcel of land in question, appellants McMillan and Wright, Inc., applied to the City of Daytona Beach for a building permit authorizing it to construct an observation tower to be operated in connection with and as a part of its pier recreational facilities. The location of the tower is immediately south of and adjacent to the existing pier and within the soft sand area of the beach. After much deliberation and an extensive investigation of the legal aspects of the application, a resolution was adopted by the City approving the application and authorizing the issuance of the requested permit.
Objection to the construction of the observation tower and a challenge to the City's right to grant a building permit for such construction were promptly registered by appellees as citizens and taxpayers of the community. After test borings were made but before construction of the tower was commenced, this action was instituted seeking declaratory relief as to ownership of the land on which appellants planned to construct the tower and an injunction to restrain any further action by appellants in the furtherance of its construction plans. After issue was joined on the pleadings, extensive discovery proceedings were had by which the depositions of many citizens, both interested and disinterested, were taken. Pretrial conferences were held and voluminous exhibits introduced pertinent to the issues raised for adjudication. Both sides filed motions for summary judgment supported by further affidavit proof.
A fair and objective consideration of all the evidence before the trial court establishes the following undisputed facts. For more than twenty years prior to the institution of this action the general public visiting the ocean beach area had actually, continuously, and uninterruptedly used and enjoyed the soft sand area of the beach involved in this proceeding as a thoroughfare, for sunbathing, picnicking, frolicking, running of dune buggies, parking, and generally as a recreation area and playground. The public's use of the area in question for the purposes hereinabove stated was open, notorious, visible, and adverse under an apparent claim of right and *767 without material challenge or interference by anyone purporting to be the owner of the land. The City of Daytona Beach has constantly policed the area for the purpose of keeping it clear of trash and rubbish and for preserving order among the users of the beach; has controlled automobile traffic using the hard sand area of the beach and enforced a prohibition against parking by vehicles on the area in question; and has otherwise exercised the police power of the City over the area for the convenience, comfort, and general welfare of all persons using and enjoying the beach area.
Appellants, purporting to be the record title owners of the parcel of land in dispute, testified that the public's use of the soft sand area owned by them was not inconsistent with nor did it adversely affect their use of the parcel in the operation of their pier so they had no reason to prohibit or interfere with the public's use of the area during the preceding years. They testified also that in washing down the pier or replacing piling from time to time they did exercise the authority of requiring people in the area to move back a safe distance so as not to interfere with this work.
From these facts the trial court found that there had accrued in favor of the public a prescriptive right to an easement for thoroughfares, bathing, recreation, and playground purposes in and over the soft sand area of the beach lying between the bulkhead line on the west and the high water mark on the east. Based upon such findings the trial court concluded that, because of the existence of such prescriptive right, the City of Daytona Beach had no lawful authority to issue a building permit authorizing appellants, McMillan and Wright, Inc., to construct on the soft sand area any permanent structure in conflict with the public right. The court therefore mandatorily enjoined McMillan and Wright, Inc., to remove the skytower built by it on the soft sand area during the pendency of this litigation and to restore the land to its original status as it existed prior to the commencement of such construction.
We have carefully considered the totality of the evidence which was before the trial court in its consideration of the motion for summary judgment filed by the respective parties. Although there appear several instances of disputed facts in the affidavits and depositions filed in the cause, such issues are more colorable than real and are not sufficiently substantial to create an issue which must necessarily be resolved by trial. The undisputed evidence supports the findings made by the trial court, and appellants have failed to demonstrate that such findings are either erroneous or constitute an abuse of discretion. It is our view that the sporadic exercise of authority and dominion by the owners over the parcel in question was not sufficient to preserve their rights as against the prescriptive rights which accrued to the benefit of the public by its use of the beach area.
Appellants further contend that the trial court applied to the facts found by it in this case incorrect principles of law when it concluded that there had accrued to the public a prescriptive right to the soft sand area of the beach involved in this case. With this contention we are unable to agree. In the cases of City of Miami Beach v. Miami Beach Improvement Co.[1] and City of Miami Beach v. Undercliff Realty & Investment Co.,[2] the Supreme Court of Florida recognized that under proper factual circumstances the public may acquire a prescriptive right in beach or oceanfront land as against the rights of the record title holder.
In setting forth the elements necessary to be proved in order to establish a prescriptive *768 right in land, the Supreme Court in Downing v. Bird[3] said:
"In either prescription or adverse possession, the right is acquired only by actual, continuous, uninterrupted use by the claimant of the lands of another, for a prescribed period. In addition the use must be adverse under claim of right and must either be with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by and adverse claim of the claimant is imputed to the owner. In both rights the use or possession must be inconsistent with the owner's use and enjoyment of his lands and must not be a permissive use, for the use must be such that the owner has a right to a legal action to stop it, such as an action for trespass or ejectment.
"While there are slight differences in the essentials of the two actions, they are not great. In acquiring title by adverse possession, there must of course be `possession'. In acquiring a prescriptive right this element is use of the privilege, without actual possession. Further, to acquire title the possession must be exclusive, while with a prescriptive right the use may be in common with the owner, or the public."
Based upon the foregoing authorities, we conclude that the trial court applied correct principles of law to the facts found by it in holding that the public has acquired a prescriptive right to the continued use and enjoyment of the soft sand area constituting the parcel of land involved in this case and that appellant City of Daytona Beach was without lawful authority to grant to appellant, McMillan and Wright, Inc., as owners of the land, a building permit to construct the observation tower which forms the basis of this dispute.
During the course of our consideration this court became concerned with whether the following adjudicatory provision of the judgment appealed was impermissibly broad, to wit:
"(3) That the Defendant City of Daytona Beach, Florida, is hereby enjoined from authorizing or purporting to authorize any person, firm, or corporation to build or construct any permanent structure on any of the lands described in paragraph three of Plaintiff State of Florida's cross complaint."
Upon further study we have concluded that the quoted provision of the judgment is not so sweeping in its terms as to prevent appellant City of Daytona Beach from exercising supervisory jurisdiction over the soft sand area of the beach within its corporate limits in the proper exercise of its police power. Within the narrow limits of its authority, the City is empowered to build or construct on the area in question structures such as lifeguard towers, public sanitation facilities and the like as in its discretion will be in the public interest and not inconsistent with the prescriptive easement vested in the public generally.
The judgment appealed is affirmed.
SPECTOR, C.J., and JOHNSON, J., concur.

ON PETITION FOR REHEARING
SPECTOR, Chief Judge.
Appellants have filed a timely petition for rehearing by which they urge this court to recede from our earlier decision affirming the trial court. Alternatively, they ask that we certify the decision to the Supreme Court of Florida as one passing upon a question of great public interest within the meaning of Article V, Section 4(2), Florida Constitution, F.S.A.
While the factual circumstances of this case require adherence to our initial decision, we deem it necessary to clarify our *769 opinion lest it be construed as lending the approval of this court to all of the theories argued by appellees in their brief in support of the trial court's judgment.
In its brief, the appellee Board of Trustees of Internal Improvement Trust Fund advanced the following argument in support of the judgment reviewed herein:
"There has been a growing concern recently in coastline areas to secure public access to beaches and other coastal areas. The publics' rights for the use and enjoyment of land are expanding, partly due to growing judicial recognition of the need to preserve beaches for public recreation. This is evidenced by recent decisions by the California and Oregon Supreme Courts. See, Gion v. Santa Cruz, 2 Cal.2d [3d] 29, 465 P.2d 50, 84 Cal. Rptr. 162 (1970); State ex. rel. Thornton v. Hay, [254 Or. 584,] 462 P.2d 671 (1969).
"The public possesses property rights in nearly all the coastal tidelands through either state ownership or public rights to use privately owned coastal property. There exist three methods by which the public has been permitted to acquire and/or maintain legal right of access to beaches and other recreational areas, none of which require any `adverse' use by members of the public in the strict sense of the term."
We now expressly reject the contention embodied in the foregoing excerpts from the appellees' brief. Were we to accept such notions, it would amount to expropriation of private property without compensation by sheer judicial fiat. Our initial decision herein was and is in no way influenced by the appellees' notions that the need to preserve beaches for public recreation in any way authorizes the taking of such beaches from their lawful owners.
One of the cases relied on by appellees, State ex rel. Thornton v. Hay, 254 Or. 584, 462 P.2d 671 (1969), indicates that in 1967 the Oregon State Assembly, in response to "public debate and political activity", enacted legislation by which it was sought to establish as the public policy of that state the very concepts urged by the appellees in the quoted excerpt from their brief. The Oregon legislation reads as follows:
"ORS 390.610 (1) The Legislative Assembly hereby declares it is the public policy of the State of Oregon to forever preserve and maintain the sovereignty of the state heretofore existing over the seashore and ocean beaches of the state from the Columbia River on the North to the Oregon-California line on the South so that the public may have the free and uninterrupted use thereof.
"(2) The Legislative Assembly recognizes that over the years the public has made frequent and uninterrupted use of lands abutting, adjacent and contiguous to the public highways and state recreation areas and recognizes, further, that where such use has been sufficient to create easements in the public through dedication, prescription, grant or otherwise, that it is in the public interest to protect and preserve such public easements as a permanent part of Oregon's recreational resources.
"(3) Accordingly, the Legislative Assembly hereby declares that all public rights and easements in those lands described in subsection (2) of this section are confirmed and declared vested exclusively in the State of Oregon and shall be held and administered in the same manner as those lands described in ORS 390.720.
"* * *."
Even though the above statute had been enacted by the legislature, the Oregon Attorney General conceded, with the court's approval, that "such legislation cannot divest a person of his rights in land, Hughes v. Washington, 389 U.S. 290, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967), and that the defendants' record title, which includes the drysand area, extends seaward to the ordinary *770 or mean high-tide line." State ex rel. Thornton v. Hay, supra, 462 P.2d at p. 675.
We deem it important to emphasize that our decision is not the product of any new legal principle. The concept of prescriptive easements is one long recognized by the courts of this and other jurisdictions. In Zetrouer v. Zetrouer, 89 Fla. 253, 103 So. 625, 626, the late Mr. Justice Terrell, speaking for the court, said:
"Where the common law obtains, 20 years' continuous and uninterrupted use has always created a prescriptive right as well in the public as private individuals. Such a right once obtained is valid and may be enjoyed to the same extent as if a grant existed, it being the legal intendment that its use was originally founded upon such a right... .
"Prescription is a mode of acquiring title to property by immemorial or long-continued enjoyment. It refers to personal usage restricted to the claimant and his ancestors or grantors. The original theory was that the right claimed must have been enjoyed beyond the period of the memory of man, which for a long time in England went back to the time of Richard I. To avoid the necessity of proving such long duration a custom arose of allowing a presumption of a grant on proof of usage for a long term of years, which is now regulated by statute in most states."
Thus, it is by virtue of this ancient doctrine that the public's right to a prescriptive easement has arisen in the beach area involved. The nature and extent of use by the public cannot be denied. It has been used by a multitude of people for many, many years. It has been regularly patrolled by police in Daytona Beach. The city has installed garbage and trash barrels along the beach. The record even shows that the city has installed showers for use of the bathing public on the easterly side of the seawall. The extensive use of the beach by such huge numbers of bathers clearly supports the trial court's finding that a prescriptive easement exists here.
Not all use of beaches or shorelines gives rise to a prescriptive easement. Neither occasional use by a large number of bathers nor frequent or even constant use by a smaller number of bathers gives rise to a prescriptive right in the public to use privately owned beaches.
There are many beaches along our entire shoreline that area resorted to by local residents and visitors alike without giving rise to prescriptive easements. It is only when the use during the prescribed period is so multitudinous that the facilities of local governmental agencies must be put into play to regulate traffic, keep the peace and invoke sanitary measures that it can be said that the public has acquired a prescriptive right to use privately owned beaches. These elements and circumstances were found to exist in the case at bar by the trial court.
We share appellees' concern with the problems posed by the development of our privately owned shorelines. Nonetheless they are privately owned. Confiscation is not permitted under the state or federal constitutions, Hughes v. Washington, supra.
As clarified above, we adhere to our initial opinion.
Our decision affirming the trial court's judgment is one which passes upon a question of great public interest within the meaning of Article V, Section 4(2), Florida Constitution, and we hereby certify this decision to the Supreme Court of Florida pursuant thereto.
WIGGINTON and JOHNSON, JJ., concur.
NOTES
[1] City of Miami Beach v. Miami Beach Improvement Co. (1943), 153 Fla. 107, 14 So.2d 172.
[2] City of Miami Beach v. Undercliff Realty & Investment Co. (1945), 155 Fla. 805, 21 So.2d 783.
[3] Downing v. Bird (Fla. 1958), 100 So.2d 57, 64, 65.