321 So.2d 65 (1975)
HOLLYWOOD, INC., a Florida Corporation, Petitioner-Cross Respondent,
v.
CITY OF HOLLYWOOD, a Municipal Corporation, Respondent-Cross Petitioner.
No. 44662.
Supreme Court of Florida.
April 23, 1975.
Rehearing Denied November 18, 1975.
*66 Sherwood Spencer, Ellis, Spencer, Butler & Kisslan, Hollywood, and Carl A. Hiaasen, McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for petitioner-cross respondent.
J. Bart Budetti, City Atty., and Ray H. Pearson, Larry S. Stewart and Bertha Claire Lee, Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for respondent-cross petitioner.
PER CURIAM.
This cause is before us on a petition and cross-petition for writ of certiorari to review the decision of the District Court of Appeal, Fourth District, reported at 283 So.2d 581. Our jurisdiction is based on conflict[1] between the decision sought to be reviewed and City of Sanford v. Ashton;[2] Cape Sable Corporation v. McClurg;[3] Canell v. Arcola Housing Corp.;[4] Burnham v. Davis Islands, Incorporated;[5] Wise v. Quina;[6] Owen v. Yount;[7] Katcher v. San Souci Company;[8] Grable v. Nunez;[9] Foremost Properties, Inc. v. Gladman;[10] Downing v. Bird,[11] and City of Palmetto v. Katsch.[12] The petition for writ of certiorari reflected apparent jurisdiction of this Court. We issued the writ and have heard argument of the parties. Upon further consideration of the matter, we have determined that the cited decisions present no direct conflict as required by the constitution, except as to the denial of a jury trial.
The facts of this case are as follows.
In the early 1920's, one Joseph Young began the development of what later became the City of Hollywood (he called it Hollywood-By-The-Sea). Young planned a seaside resort to rival Atlantic City, then at its zenith, one which would appeal to all classes desiring the advantages of climate and oceanfront. The plan for the beach-front was that a thirty foot boardwalk would run the length of the city, paralleling the ocean and upland from it. Between the boardwalk and the water's edge, the beach would be graded and maintained as a permanent bathing beach.
*67 On January 11, 1924, the plat of Hollywood Beach Second Addition was recorded by Young's Home Seekers Realty Company; on September 9, 1924, the plat of Hollywood Central Beach was recorded by the same company. On November 25, 1925, the Respondent, City of Hollywood, was created. In August, 1927, Young deeded to Respondent all of "the streets, drives, boulevards, alleys, ways, walks, avenues, parkways, and highways, by whatever name they may be termed, platted and described in that certain plat, also named in an amended plat, of Hollywood Central Beach". Although Block 205 was not labeled on the plat, the then current price list made it clear that 205 was a "parkway". Almost two years later, on April 25, 1929, two large money judgments were entered against Home Seekers Realty Company, leading to later execution sales and Sheriff's deeds. The Respondent's minutes of July 2, 1930, show that it had actual express notice of the proposed execution sale. On September 1, 1930, Highway Construction Company of Ohio, Inc., acquired title to Block C, Hollywood Beach Second Addition; later, on December 1, 1930, that same company acquired title to Block 205, Hollywood Central Beach. Thereafter, on February 18, 1931, Highway Construction Company conveyed title to Petitioner by fee simple deed, which Petitioner recorded February 21, 1931. In June, 1964, Respondent recorded its notice of claim of ownership. In August, 1964, the tax assessor for Broward County sued both Petitioner and Respondent for a declaratory decree and equitable relief, alleging that both parties claimed ownership of two miles of ocean-front beach and that the tax status of the land was unclear. In September, 1964, Respondent filed its cross-claim against Petitioner.
Petitioner claims that its title to the land in question was derived from a Sheriff's Deed issued to Highway Construction Company, which company subsequently conveyed its interest to Petitioner in 1931. Respondent predicates its claim of ownership upon various acts and occurrences, including documentary and testimonial evidence reflecting ownership by virtue of a deed from the original owner, as well as ownership arising by dedication and prescription. The trial court held, inter alia, that Respondent possessed neither title nor other interest or rights in the property, and that title is in the Petitioner.
The District Court of Appeal, Fourth District, reversed and remanded for a new trial, finding that the trial court erred in rejecting certain documentary and testimonial evidence bearing on the Respondent's claims of ownership by dedication. In reversing, the District Court adopted the seven methods for indicating an intent to dedicate land to public purpose as set forth in City of Palmetto v. Katsch.[13] The District Court found that the rejected evidence related to each of the categories established as a test in Katsch, supra, and that it had a direct bearing on the issue of acceptance of dedication. The District Court advised the trial court, on remand, to consider the applicability of City of Daytona Beach v. Tona-Rama, Inc.[14] to the issue of prescription, however, subsequently that decision was quashed by this Court.[15] The District Court held also that prior decisions by it on an earlier interlocutory appeal and by this Court on petition for certiorari were neither conclusive nor dispositive of the Respondent's claim of ownership of the land.[16] Additionally, the District Court rejected Respondent's claim for a jury trial.
The Respondent defended its ownership of the beach in question under several *68 legally independent theories, including deed, dedication, prescription and adverse possession. To support its theory of common law dedication, Respondent proffered, inter alia: many of Young's publications (including pamphlets, magazines, brochures and advertisements) clearly stating that it was his intent that the beach be dedicated to the City; oral testimony of young's officials and salesmen which corroborates the documentary evidence; oral testimony of Young's purchasers which corroborates the documentary evidence; the plats themselves; deeds to lots west of the boardwalk indicating conveyance as waterfront property; Young's price list describing Block 205 as a "parkway"; the Respondent's newspaper advertisements prior to 1930 proclaiming ownership of the beach; the fact that the present beach has always been open to public use and no permission was needed to use the beach; Respondent's tax rolls beginning in 1926, showing that it has always treated the beach property as public land belonging to it; Respondent's publications which have proclaimed its municipal ownership of the beach continuously since 1926; evidence of the fact that in 1938 Respondent granted an easement to the United States for deposit of spoil on the beach; and evidence of Respondent's continuous maintenance, upkeep and improvement of the beach since 1925. This voluminous mass of data was not admitted by the trial court, an act which was held to be error by the District Court; we agree. Relying on Katsch, supra, the District Court held:
"... a `common-law dedication' is the setting apart of land for public use, and to constitute it there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the land to the public use, and an acceptance by the public of the dedication. This seems to be the general rule, and whether an express or an implied dedication is relied on, the intention of the owner to set apart the lands for the use of the public is the foundation and essence of every dedication ... .
"The act of dedication is affirmative in character, need not be by formal act or dedication, may be by parol, may result from the conduct of the owner of the lands dedicated, and may be manifested by a written grant, affirmative acts, or permissive conduct of the dedicator. In fact, any manner in which the owner sees fit to indicate a present intention to appropriate his lands to public use meets the requirement of the law.
"The means generally exercised to express one's purpose or intention to dedicate his lands to the public use are by a (1) written instrument executed for that purpose; (2) filing a plat or map of one's property designating thereon streets, alleys, parks, etc.; (3) platting one's lands and selling lots and blocks pursuant to said plat indicating thereon places for parks, streets, public grounds, etc.; (4) recitals in a deed by which the rights of the public are recognized; (5) oral declarations followed by acts consistent therewith; (6) affirmative acts of the owner with reference to his property, such as throwing it open in a town, fencing and designating streets thereon; (7) acquiescence of the owner in the use of his property by the public for public purposes.
* * * * * *
"The evidence which was rejected related to each of the categories enumerated in City of Palmetto v. Katsch, supra. The evidence, additionally, had a direct bearing on the question of acceptance of dedication. The acceptance of a dedication may be by formal action of the proper authorities or it may be by public user. Robinson v. Town of Riviera, 1946, 157 Fla. 194, 25 So.2d 277... .
* * * * * *
"To reiterate, the excluded evidence directly related to the issue of the dedicator's *69 intention to dedicate and the mode and manner of the acceptance of such dedication as to both Block 205 and Block C. The City, therefore, should be afforded the opportunity of presenting evidence on the issue of common law dedication and the trial court should give due consideration thereto. Cf. Boothby v. Gulf Properties of Alabama, Fla. 1948, 40 So.2d 117.
"In considering the evidence bearing upon the issue of common law dedication consideration must also be given to the legal effect of the 1927 deed executed by appellee's predecessor in title in favor of the City as such deed may relate to Block 205. The City sought to introduce the deed and other extrinsic evidence to establish that the conveyance of "walks" and "parkways" referred to in the deed was intended by the owner thereof to be a conveyance of Block 205. Whether the City would have been successful in proving what the grantor's intention was with respect to the use of the word "parkway" does not determine the question of admissibility of the deed and consideration of extrinsic evidence... ."
Turning our attention to that portion of the District Court's opinion which refers the trial court to the decision of the District Court of Appeal, First District, in City of Daytona Beach v. Tona-Rama, Inc.,[17] we note that this Court in reversing that opinion said:[18]
"It is possible for the public to acquire an easement in the beaches of the State by the finding of a prescriptive right to the beach land... .
* * * * * *
"This Court in Downing v. Bird, 100 So.2d 57 (Fla. 1958), set forth the test for right of access by prescription:
`In either prescription or adverse possession, the right is acquired only by actual, continuous, uninterrupted use by the claimant of the lands of another, for a prescribed period. In addition the use must be adverse under claim of right and must either be with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by and adverse claim of the claimant is imputed to the owner. In both rights the use or possession must be inconsistent with the owner's use and enjoyment of his lands and must not be a permissive use, for the use must be such that the owner has a right to a legal action to stop it, such as an action for trespass or ejectment.'
* * * * * *
"The beaches of Florida are of such a character as to use and potential development as to require separate consideration from other lands with respect to the elements and consequences of title. The sandy portion of the beaches are of no use for farming, grazing, timber production, or residency  the traditional uses of land  but has served as a thoroughfare and haven for fishermen and bathers, as well as a place of recreation for the public. The interest and rights of the public to the full use of the beaches should be protected... .
* * * * * *
"If the recreational use of the sandy area adjacent to mean high tide has been ancient, reasonable, without interruption and free from dispute, such use, as a matter of custom, should not be interfered with by the owner. However, the owner may make any use of his property which is consistent with such public use and not calculated to interfere with the exercise of the right of the public to enjoy the dry sand area as a recreational adjunct of the wet sand or foreshore area."
Contrary to the facts in that case, we find that the evidence of prescription sub judice *70 satisfies the test of adverse user set forth therein; for example: for over half a century, Respondent uninterruptedly published to the world that the beach belonged to Respondent; although Respondent never asked permission to use the beaches, yet it has openly and adversely occupied the beach by improving it, erecting showers, planting trees, posting city signs, providing life guards and routinely raking, grading and maintaining the beaches; the public has used the beaches daily; Respondent has carried the property on its tax rolls as public beach, although the county did not always do so; although Petitioner twice wrote Respondent (once in 1945 and again in 1948) advising it that the company owned the land and that it wished the lands placed in the company's name on the tax rolls, Respondent refused to do so; and Respondent spent well over a million dollars on the beaches in its maintenance and improvement of them over a 50-year period. We conclude that on remand the trial court would be well advised to consider the facts developed sub judice in light of this Court's opinion in the Tona-Rama case, supra.
We have considered the remaining issues raised by Petitioner and find them to be without merit.
Respondent by its cross-petition seeks reversal of the trial court's order, affirmed by the Fourth District Court of Appeal, denying it a trial by jury. The District Court simply rejected the Respondent's claim for a jury trial, saying that "the City has failed to demonstrate that it is a `defendant ... in actual possession' so as to give rise to a trial by jury," citing Fla. Stat. § 65.061 and Albury v. Drummond, 95 Fla. 265, 116 So. 236 (1928).
The facts are that in August, 1964, the tax assessor for Broward County sued both Petitioner and Respondent for a declaratory decree and equitable relief. Although no demand for jury trial was made in its original answer, filed September 3, 1964, the Respondent on February 3, 1970, filed a written motion for a jury trial on the issue of the dedication of the subject property to the municipality prior to 1930, and on the issue of the actual possession of the property. The essential grounds of the motion were that the issues of dedication and possession were factual issues which should be determined by a jury and that no prejudice could be shown to either party by granting a trial by jury. The trial judge, by order dated March 23, 1970, summarily denied the motion for a jury trial. Then, on May 22, 1970, the Respondent filed an amended answer and amended cross-claim against Petitioner, and on June 4, 1970, filed a demand for a jury trial on the issues of dedication and right to possession of the property, based on Fla. Stat. 65.061. Apparently the Respondent also filed another motion for jury trial on August 17, 1970, but in any event all demands and motions for jury trial made by the Respondent were denied by the trial judge.
In its amended answer the Respondent alleged, inter alia, that the subject property had been dedicated to the public and that the Respondent had actually possessed and used the property for the benefit of the public for more than twenty years. By cross-claim against Petitioner, Respondent sought to quiet title and to remove the cloud on Respondent's title caused by Petitioner's recorded deed from Highway Construction Company.
Petitioner counter-claimed against the Respondent seeking to remove the cloud from its title by cancellation of Respondent's previously recorded Notice of Claim to Real Estate and also counter-claimed for damages against Respondent for filing the allegedly false Notice of Claim to Real Estate. As noted above, the Respondent was denied requests for a jury trial before and after the filing of the amended answer and counter-claims.
Respondent's claim to a right to a trial by jury is based on Fla. Stat. 65.061, which reads in pertinent part as follows:
"65.061. Quieting Title; additional remedy (1) Jurisdiction.  Chancery courts *71 ... shall determine the title of plaintiff and may enter a judgment quieting the title and awarding possession to the party entitled thereto, but if any defendant is in actual possession of any part of the land, a trial by jury may be demanded by any party whereupon the court shall order an issue in ejectment as to such lands to be made and tried by a jury. Provision for trial by jury does not affect the action on any lands that are not claimed to be in the actual possession of the defendant. The court may enter final judgment without awaiting the determination of the ejectment action." (Emphasis supplied)
Respondent's position is that not only was it a defendant in the original suit filed by the tax assessor, but that it was also a counter-defendant against whom affirmative relief and damages were sought by counter-claimant, Petitioner, and granted by the trial judge. It is also contended that the evidence is irrefutable that Respondent was in actual possession of the beach for half a century, exercising exclusive domain and control thereover, thus meeting both tests of F.S. 65.061. In its brief, the Petitioner raises several arguments in support of its contention that the Respondent is not entitled to a jury trial. It is argued, for example, that the Respondent was not a defendant, but a plaintiff, in a quiet title action; that the suit sought declaratory and equitable relief, which raised issues for the court and not a jury; that in the actual trial the Respondent assumed the position of plaintiff upon whom the burden of proof rested; that the respondent's contention that affirmative relief was awarded based on Petitioner's counter-claim against the Respondent is unsupported by the record; and that the record completely negates the assertion that the Respondent was in actual possession of the locus in quo. Finally, Petitioner contends that since neither it nor Respondent made any demand for jury trial within a ten-day period following the last pleading, provided by Florida Rules of Civil Procedure 1.430, the Respondent waived the right to a jury trial.
We hold that the Respondent was entitled to a jury trial on the issues of dedication and actual possession of the property and that the right to that jury trial has not been waived. Questions as to the right to a jury trial should be resolved, if at all possible, in favor of the party seeking the jury trial, for that right is fundamentally guaranteed by the U.S. and Florida Constitutions. See U.S. Constitution, Amendments 7 and 14, and Florida Constitution, Article I, Declaration of Rights, § 22.
There is substantial evidence in the record to support the Respondent's contention that it was in actual possession of the property, that it openly improved the beaches for nearly half a century by constructing groins, rehabilitating the beach after devastating hurricanes, planting trees, erecting showers, posting city signs, providing life guards, and routinely and continuously raking, cleaning, grading and maintaining the beaches. For the fifteen fiscal years ending in 1969, the Respondent's expenditures totalled $1,189,631.43 for the improvement and maintenance of the pubic beaches. Finally, it is undisputed that the public has daily used the beaches.
In the City of St. Petersburg v. Meloche, 92 Fla. 770, 110 So. 341 (1926), the issue before this Court was what constituted possession under the adverse possession statutes. We held:
"[2] As to the title of the complainant by adverse possession, it is true that, his claim not being founded upon a written instrument, or color of title, paragraph 2 of section 2936 of Revised General Statutes of Florida applies as to what constitutes the occupation or possession required, viz.:
`1. Where it [the land] has been protected by substantial inclosure; or, 2  where it has been usually cultivated or improved.'

*72 "In considering the meaning of the word `improved' as used in the statute, each case depends upon the circumstances of that particular case. In the one under consideration it could hardly be expected that the land should be cultivated as a farm, or even to have been inclosed by substantial fence. Reclaiming it from submerged land, having a house extending upon a portion of it, planting some trees upon it, placing the black dirt upon it, keeping a wood pile thereon, and the general notice to the public, might appear sufficient. In the case of Bensdorff v. Uihlein, 132 Tenn. 193, 177 S.W. 481, 2 A.L.R. 1364, we find very similar circumstances. Under a statute practically the same as ours as to the necessary occupancy or possession, it was held that a triangular piece of land was so adversely held by the claimants, though the only evidence was that they had paved the same, it lying contiguous to their store building, and had used it as an entrance to their store; the general public being also permitted to constantly use the same." At 342.
It is difficult to comprehend how the Respondent could do more to possess the beach property, short of erecting buildings and enclosures, than by caring for it, maintaining it and allowing unquestioned use of the beach property by the public.
In Albury v. Drummond, supra, this Court held that in a suit to quiet title the Court must first find that the land or some particular part thereof is in the actual possession of one or more of the defendants before a jury trial may be had by any party. The question thus becomes whether either party to this dispute was a defendant in possession of the land.
Section 45.011, F.S.A., defines "plaintiff" as "any party seeking affirmative relief whether plaintiff, counter-claimant, crossclaimant, or third party plaintiff, conterclaimant or crossclaimant." "Defendant" is defined as "any party against whom such relief is sought." Applying these definitions to the case sub judice, we find that the Respondent easily fits within the definition of the term "defendant". Not only was the Respondent an original defendant in the suit brought by the tax assessor for Broward County against both Petitioner and Respondent, more importantly affirmative relief was sought and in fact obtained by Petitioner in its counter-claim against Respondent. The trial court below specifically granted the relief sought by Petitioner in the first of its two counter-claims by ordering that the Notice of Claim to Real Estate filed by Respondent on June 22, 1964, and recorded in the Broward County records, be cancelled of record. There is no question that the Respondent, in defending against the counter-claim, the nature of which was an action to remove a cloud on Petitioner's title, was a defendant in actual possession of the property.
We find no merit in Petitioner's remaining contentions regarding, inter alia, Respondent's waiver of its right to a jury trial, and that a jury trial is not allowable in a suit in equity. Adams v. Citizens Bank of Brevard, 248 So.2d 682 (Fla. 4th DCA 1971). With respect to the question of waiver, we notice that although no timely demand for a jury trial was made by either party within ten days of the initial last pleadings directed to the issues desired to be tried, amended pleadings were filed by Respondent in May, 1970, and by Petitioner in June, 1970. In his Final Judgment the trial judge noted that the amended pleadings of Respondent first raised the issue of ownership by prescription, and the pleadings support this conclusion. Where an amended pleading injects a new issue in the case the time for filing a demand for a jury trial is revived although the party making the demand may have waived the right to a jury trial at the time of the initial responsive pleadings. See Leopold v. Richard Bertram and Co., 276 So.2d 225 (Fla. 3d DCA 1973) and Moretto v. Sussman, 274 So.2d 259 (Fla. 4th DCA 1973). It is not contended that Respondent failed to make a demand for jury trial timely to its amended answer and cross-claim.
*73 The determination of whether a trial judge abused his discretion in denying a demand for jury trial must be decided on a case by case basis; however, due to the extreme time lapse between the filings of the pleadings in this case, the fact that amended pleadings were filed raising new issues, and the apparent lack of prejudice resulting to the Petitioner in granting Respondent a jury trial, we hold that the trial judge abused his discretion in denying Respondent's demand for jury trial.
In conclusion, conflict having been demonstrated, as to the denial of a jury trial, that portion of the District Court's opinion denying Respondent a jury trial is quashed with directions to remand for proceedings consistent herewith.
ADKINS, C.J., ROBERTS, BOYD and McCAIN, JJ., and FERRIS, Circuit Judge, concur.
OVERTON, J., concurs in judgment only.
DEKLE, J., dissents.
NOTES
[1] Article V, Section 3(b)(3), Florida Constitution.
[2] 131 Fla. 759, 179 So. 765 (Fla. 1938).
[3] 74 So.2d 883 (Fla. 1954).
[4] 65 So.2d 849 (Fla. 1953).
[5] 87 So.2d 97 (Fla. 1956).
[6] 174 So.2d 590 (Fla.App. 1965).
[7] 198 So.2d 360 (Fla.App. 1967), cert. den., Fla., 204 So.2d 330.
[8] 200 So.2d 826 (Fla.App. 1967), cert. disch., Fla., 217 So.2d 297.
[9] 64 So.2d 154 (Fla. 1953).
[10] 100 So.2d 669 (Fla.App. 1958), cert. den., Fla., 102 So.2d 728.
[11] 100 So.2d 57 (Fla. 1958).
[12] 86 Fla. 506, 98 So. 352 (Fla. 1923).
[13] Id.
[14] 271 So.2d 765 (Fla.App. 1973).
[15] City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974).
[16] 232 So.2d 769 (Fla.App. 1970), cert. den., Fla., 238 So.2d 111.
[17] See Note 14, supra.
[18] See Note 15, supra, at pp. 75-78, incl.