403 So.2d 528 (1981)
HOLLYWOOD, INC., Appellant,
v.
William G. ZINKIL, Sr., As Tax Assessor of Broward County, Florida, and City of Hollywood, Appellees.
No. 78-1425.
District Court of Appeal of Florida, Fourth District.
September 2, 1981.
*529 Davis W. Duke, Jr., of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, and Ellis, Spencer, Butler & Kisslan, Hollywood, for appellant.
*530 Ray H. Pearson, Larry S. Stewart and Bertha Claire Lee of Frates, Floyd, Pearson, Stewart, Richman & Greer, P.A., Miami, for appellees.
HURLEY, Judge.
This appeal marks another milestone in the prolonged litigation to determine who "owns" a one and one-half mile stretch (approximately ten to twelve acres) of beach in Hollywood, Florida. The issue was submitted to a jury which found (1) that title to one section of beach (Block 205) was conveyed to the city by a 1927 deed; (2) that both sections of beach property (Blocks 205 & C) were dedicated for perpetual public use and were accepted by the city prior to July, 1930; and (3) that the citizens of Hollywood used both pieces of property in a manner which was adverse to the rights of Hollywood, Inc. for a period of at least twenty years after December, 1930. Our review of the record leads us to conclude that the jury's first and second findings are based upon substantial, competent evidence. Thus, we affirm both findings and conclude that the city, as trustee for the people, is entitled to possession of both pieces of beach property to assure their continued availability to the public as open and free recreational areas. The jury's finding of adverse possession, however, suffers from a fatal lack of evidence which requires a modification of the final judgment.

I

FACTUAL HISTORY
This case is no stranger to the appellate courts[1] and since a brief factual history is necessary to understand the present status of the case, we excerpt the following portion of the Supreme Court's opinion in Hollywood, Inc. v. City of Hollywood, 321 So.2d 65, 66-67 (Fla. 1975):
In the early 1920's, one Joseph Young began the development of what later became the City of Hollywood (he called it Hollywood-By-The-Sea). Young planned a seaside resort to rival Atlantic City, then at its zenith, one which would appeal to all classes desiring the advantages of climate and oceanfront. The plan for the beachfront was that a thirty foot boardwalk would run the length of the city, paralleling the ocean and upland from it. Between the boardwalk and the water's edge, the beach would be graded and maintained as a permanent bathing beach.
On January 11, 1924, the plat of Hollywood Beach Second Addition was recorded by Young's Home Seekers Realty Company; on September 9, 1924, the plat of Hollywood Central Beach was recorded by the same company. On November 25, 1925, the Respondent, City of Hollywood, was created. In August, 1927, Young deeded to Respondent all of "the streets, drives, boulevards, alleys, ways, walks, avenues, parkways, and highways, by whatever name they may be termed, platted and described in that certain plat, also named in an amended plat, of Hollywood Central Beach". Although Block 205 was not labeled on the plat, the then current price list made it clear that 205 was a "parkway". Almost two years later, on April 25, 1929, two large money judgments were entered against Home Seekers Realty Company, leading to later execution sales and Sheriff's deeds. The Respondent's minutes of July 2, 1930, show that it had actual express notice of the proposed execution sale. On September 1, 1930, Highway Construction Company of Ohio, Inc., acquired title to Block C, Hollywood Beach Second Addition; later, on December 1, 1930, that same company *531 acquired title to Block 205, Hollywood Central Beach. Thereafter, on February 18, 1931, Highway Construction Company conveyed title to Petitioner by fee simple deed, which Petitioner recorded February 21, 1931. In June, 1964, Respondent recorded its notice of claim of ownership.

II

PROCEDURAL HISTORY
In addition to the facts, a brief recap of the pleadings and earlier proceedings will also assist in understanding of the present appeal. Again, we quote from Hollywood, Inc. v. City of Hollywood, supra:
In August, 1964, the tax assessor for Broward County sued both [Hollywood, Inc. and the City of Hollywood] for a declaratory decree and equitable relief, alleging that both parties claimed ownership of two miles of ocean-front beach and that the tax status of the land was unclear. In September, 1964, [the City] filed its cross-claim against [Hollywood, Inc.].
[Hollywood, Inc.] claims that its title to the land in question was derived from a Sheriff's Deed issued to Highway Construction Company, which company subsequently conveyed its interest to [Hollywood, Inc.] in 1931. [The City] predicates its claim of ownership upon various acts and occurrences, including documentary and testimonial evidence reflecting ownership by virtue of a deed from the original owner, as well as ownership arising by dedication and prescription. The trial court held, inter alia, that [the City] possessed neither title nor other interest or rights in the property, and that title is in [Hollywood, Inc.].
The District Court of Appeal, Fourth District, reversed and remanded for a new trial, finding that the trial court erred in rejecting certain documentary and testimonial evidence bearing on the [City's] claims of ownership by dedication... . The District Court advised the trial court, on remand, to consider the applicability of City of Daytona Beach v. Tona-Rama, Inc. [271 So.2d 765 (Fla.App. 1973)] to the issue of prescription... . Additionally, the District Court rejected [the City's] claim for a jury trial.
Id. at 67 (footnote omitted).
Thereupon, both parties petitioned the Supreme Court for review by certiorari. The court issued the writ, heard argument, and, in a thorough opinion, affirmed the District Court's decision except for that part which affirmed the denial of the city's motion for a jury trial. The Supreme Court reasoned that the city was a "defendant in actual possession" as that term is used in Section 65.061, Florida Statutes (1973), and, therefore, the city was entitled to a jury trial "on the issues of dedication and actual possession of the property... ." 321 So.2d at 71. The latter phrase was drawn from language in the city's motion for a jury trial and referred to its allegation that it had "continuously, notoriously, uninterruptedly, openly and visibly maintained, assumed control over and used [the beach property] for the benefit of the public for more than twenty years." Thus, the Supreme Court remanded the case for retrial by jury on the issues of dedication, prescription and adverse possession.
The case was retried before a jury in 1978. The city relied on three theories: deed, dedication and adverse possession.[2] *532 At the conclusion of the trial, the jury returned the following special verdict:
We the Jury, find as follows:
1. That the Home Seekers Realty deed of August, 1927, conveyed title to Block 205 to the City of Hollywood.
 YES xx NO ____
2. That there was a dedication and acceptance of Blocks 205 and C prior to July, 1930.
 YES xx NO ____
3. That after December, 1930, the City and its citizens used Blocks 205 and C adverse to the rights of Hollywood, Inc., for at least a period of 20 years.
 YES xx NO ____
So say we all.
Shortly thereafter the trial court entered a final judgment which recited the jury's findings and concluded that the city "is the owner in fee simple and entitled to possession of the [beach property]."

III

DEDICATION
Although the city advanced several alternate theories, dedication was the primary claim. Thus, we first consider appellant's contention that the evidence below was insufficient to support the jury's finding of common law dedication and acceptance of Blocks 205 and C prior to July, 1930. Our yardstick is the seminal case on common law dedication in Florida, City of Palmetto v. Katsch, 86 Fla. 506, 98 So. 352 (1923), which held as follows:
"[C]ommon-law dedication" is the setting apart of land for public use, and to constitute it there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the land to the public use, and an acceptance by the public of the dedication. This seems to be the general rule, and whether an express or an implied dedication is relied on, the intention of the owner to set apart the lands for the use of the public is the foundation and essence of every dedication.
The act of dedication is affirmative in character, need not be by formal act or dedication, may be by parol, may result from the conduct of the owner of the lands dedicated, and may be manifested by a written grant, affirmative acts, or permissive conduct of the dedicator. In fact, any manner in which the owner sees fit to indicate a present intention to appropriate his lands to public use meets the requirement of the law.
The means generally exercised to express one's purpose or intention to dedicate his lands to the public use are by a (1) written instrument executed for that purpose; (2) filing a plat or map of one's property designating thereon streets, alleys, parks, etc.; (3) platting one's lands and selling lots and blocks pursuant to said plat indicating thereon places for parks, streets, public grounds, etc.; (4) recitals in a deed by which the rights of the public are recognized; (5) oral declarations followed by acts consistent therewith; (6) affirmative acts of the owner with reference to his property, such as throwing it open in a town, fencing and designating streets thereon; (7) acquiescence of the owner in the use of his property by the public for public purposes.

*533 As stated by McQuillan, a dedication by use for public purposes occurs only where it clearly appears that the use is with the knowledge and consent of the owner, or without his objection, and under such circumstances as fairly to give rise to the presumption that the owner intended to dedicate to such use. And mere uses by the public, although long continued, should be regarded as a license only, revocable at the pleasure of the owner, where it does not appear that any public or private interests have been acquired upon the faith of the supposed dedication, which would be materially impaired if the dedication were revoked.
Id. 98 So. at 353.
With these precepts in mind, we turn to the evidence in the case at bar. First, the city introduced a deed, dated August 24, 1927, from Home Seekers Realty Company (one of Young's companies and a predecessor in title to Hollywood, Inc.) to the City of Hollywood. It referred to the amended plat of Hollywood Central Beach and conveyed:
All and singular the streets, drives, boulevards, alleys, ways, walks, avenues, parkways, and highways by whatever name they may be termed, platted and described in that certain plat.
However, the deed contained the following limitation:
PROVIDED, and this grant is made upon the express condition that all and singular the above described lands shall be used by the public or the grantee herein for the specific purposes for which they were platted, to-wit: Streets, drives, boulevards, alleys, ways, walks, avenues, parkways and highways and that upon any cessation or abandonment of such use thereof or any part thereof by the public or by the grantee herein, the title to such portion so abandoned shall immediately revert to the grantor herein and such grantor shall be immediately entitled to re-enter into full possession thereof.
The city claimed that the term "parkway" included the beach section denominated as Block 205. To support its contention, it offered into evidence Young's original price list which expressly listed Block 205 as a "parkway." The propriety of admitting the price list into evidence is beyond question for this issue was settled by this court on the first appeal when we said:
Extrinsic evidence such as parol evidence is permissible to explain ambiguities in a written instrument, particularly where such ambiguity is "latent" as distinguished from "patent". The ambiguity in the 1927 deed was a latent ambiguity; therefore, the trial court erred in excluding the deed as well as the extrinsic evidence relating thereto.
City of Hollywood v. Zinkil, 283 So.2d 581, 584-585 (Fla. 4th DCA 1973) (citations omitted).
The price list, dated December 15, 1924, was prepared by Home Seekers Realty Company, which, as noted earlier, was one of Young's companies. It lists 207 blocks of property, most of which are subdivided into lots with individual sales prices. The following listing for Block 174 illustrates the general pattern:

 BLOCK 174
 Lot 1 4,400.00
 Lots 2 to 29 inclusive, each 3,850.00
 Lot 30 5,225.00

Blocks 203, 204, 205 (one of the pieces of beach property in question) and 206 differ from the general property use. They appear on the price list with the following designations:
BLOCK 203
Dania Park
BLOCK 204
Hotel Site
BLOCK 205
Parkway
BLOCK 206
Park
Recalling that the August 24, 1927 deed dedicated all "parkways" for public use, the question for the jury's determination was whether Young intended the beach property in Block 205 to be encompassed within his dedication of all parkways. To demonstrate Young's intent, the city called several *534 of Young's former co-workers and employees to the witness stand. Each testified of Young's unwaivering intent to dedicate the beaches for perpetual public use. Commenting on how the price list was utilized, Robert C. Habig, Young's assistant sales manager, said that a large copy was exhibited under plate-glass on a tabletop in the room where customers met with salesmen to discuss the purchase of property. According to Habig, at Young's specific instructions, all prospective buyers were assured "that all properties east of the Broad Walk was intended for the benefits of the city of  the people of the City of Hollywood forever; never be sold; never be any construction on it." (Tr. 208). Habig said Young, himself, made this statement and Habig further testified that he heard Young tell his salesmen to include this statement in their sales presentations. Habig also noted that the price list specified certain blocks as "ocean front residence sections." Since they faced the ocean, these lots were priced substantially higher than others in the city. This testimony is especially significant since all of the "ocean front residence sections" were to the west of the broad walk and beach, i.e., Block 205.
What follows is a sampling of the city's evidence supporting its contention that Young dedicated the beach property for public use. John M. Kagey, head of Young's Miami sales force testified that
[Young] thought the best advantage there would be for the folks that the beach was going to be made a public beach and every property owner in Hollywood be a participant in the ownership of that beach. It was going to be a public beach and none of it was for sale. (Tr. 666).
[Young said] we was [sic] offering a public beach and it was the only one in the area, and it ought to help stimulate sales, to make that area more in demand. (Tr. 674).
James W. Dickey, who worked as a salesman in 1924 for Young's Hollywood Land and Water Company and who later became publisher of the Fort Lauderdale News, described a mass meeting held in 1924 at which an individual named Pringle, another Young employee, addressed a large group and told them that he was acting on Young's instructions. Then, according to Mr. Dickey, Pringle held up what he described as a deed and told the crowd that young had dedicated the beach to the public.
The city also introduced a number of documentary exhibits, many issued by Young's companies, which further demonstrated Young's intent to develop the beach as a public recreational area. We quote only a few. The Hollywood Reporter of April 1, 1923 (a Young publication), contained this statement:
Between the Broad Walk and the ocean is a beautiful strip of coastline that will be graded down to the water's edge and dedicated to the city as a permanent bathing beach.
In April, 1294, O.E. Behymer, an editorial writer for Young's Hollywood Reporter, wrote:
Hollywood-by-the-Sea will have a different story to tell. Here there will be no riparian rights along the ocean frontage to exclude the public. For a distance of five miles one of the most beautiful beaches in Florida will be forever dedicated to the people, never to be privately owned or built upon, a great pleasure rendezvous for the throngs that will visit this delightful resort city. A Broad Walk of concrete, thirty feet wide, will traverse the entire distance, and beyond it an appealing stretch of lovely sand beach, beautified with waving palm trees, will always extend a cordial invitation to lovers of the sea.
Similarly, a 1926 edition of a Young company pamphlet entitled "Joseph W. Young  Properties, Inc., Hollywood-by-the-Sea  in Florida" contained a pictorial review of the development of the city. A photograph of the beach area is particularly significant for it is sub-titled: "All Year Surf Bathing on Hollywood's 6 Mile Free Beach." (Emphasis supplied.)
*535 On the issue of acceptance by the city, the record is replete with testimony of continued and uninterrupted use by the public throughout this time period. Although Hollywood, Inc. disputed the foregoing testimony of dedication and acceptance, we find that the trial record is a veritable cornucopia of competent evidence to support the jury's finding of dedication and acceptance prior to July of 1930.

IV

ADVERSE POSSESSION
Next, we consider the jury's finding of adverse use or possession. Though it is well-settled that a public entity may obtain fee simple title by adverse possession, Levering v. City of Tarpon Springs, 92 So.2d 638 (Fla. 1957); Kelly v. City of Cocoa, 188 So.2d 862 (Fla. 4th DCA 1966), we hold that there was insufficient proof in the case at bar to support the finding of adverse possession. There is no evidence that the City of Hollywood, having gained entry to the land as a permissive user, notified Hollywood, Inc., or its predecessor in title, that the city claimed an ownership interest in the beach other than by dedication. Consequently, since the city always used the land consistent with its dedicated purpose, it is legally impossible to sustain a finding of adverse possession.
We dealt with an analogous situation in Yates v. Bass Ranch, Inc., 379 So.2d 710 (Fla. 4th DCA 1980). There the permissive use was a tenancy at will and we held:
This placed the burden on appellant to show a termination of the voluntary nature of the tenancy, "for the law presumes that once a man goes into possession as a tenant, the relationship continues until the contrary is made to appear." [Citation omitted.] The tenant's disclaimer and disavowal of the landlord's title must be conveyed to the landlord by clear, positive and distinct notice.
Id. at 711-12
The same point was made by the court in Tallent v. Barrett, 598 S.W.2d 602, 605 (Mo. App. 1980):
Also, if the possession of those in residence is permissive at its inception, then their possession, no matter how long it continues, will not divest the other heirs of their titles unless such possession becomes hostile and such hostility is effectively brought home to all the owners and remains so for the necessary statutory period of time.
This principle also applies to the case at bar. The jury found that the City of Hollywood obtained permissive use of the land though common law dedication. See City of Palmetto v. Katsch, supra; Mingledorff v. Crum, 388 So.2d 632 (Fla. 1st DCA 1980). Thus, as a matter of law, before such permissive use could undergo the metamorphosis of adverse possession, it was incumbent upon the city to prove that it effectively notified Hollywood, Inc., or its predecessor in title, of the city's new and adverse claim of ownership. This it failed to do.
Clearly, the city regarded the beach as public and so advertised this fact. But there is no evidence that the city either directly notified Hollywood, Inc. of its claim of ownership of the beach in fee simple or, alternatively, that the city used the land in a manner inconsistent with its dedicated purpose so as to put Hollywood, Inc. on constructive notice of the city's claim. On the contrary, the city ignored and failed to contradict two letters from Hollywood, Inc., dated August 2, 1945 and June 17, 1948, in which Hollywood, Inc. asserted an ownership interest in the land. Indeed, as late as June 22, 1964, when the city filed a public notice of claim, it adhered to the position that it held the land through dedication. It stated:
That the CITY OF HOLLYWOOD makes claim to the property hereinabove described, as follows:
Lot "C", HOLLYWOOD BEACH SECOND ADDITION, according to the plat thereof recorded in Plat Book 4, Page 6, of the public records of Broward County, Florida was dedicated for the perpetual use of the public on January 8, 1924... .

*536 Block 205, HOLLYWOOD CENTRAL BEACH, according to the plat thereof recorded in Plat Book 4, Page 20, of the public records of Broward County, Florida was dedicated to the perpetual use of the public and deeded to the CITY OF HOLLYWOOD... .
We are compelled to hold that the absence of proof of notification is fatal to the city's present claim of ownership by adverse possession. As we suggested in Yates v. Bass Ranch, Inc., supra, the sine qua non of adverse possession is adverse use. Adverse use or "[h]ostility imports denial of the owners' title, and possession, however open and long it may be, is not adverse without such a denial of the rightful owner's title." Application of Kamakana, 58 Haw. 632, 574 P.2d 1346, 1351 (1978). All that was shown in the case at bar is that the City of Hollywood accepted and continued to maintain the land as a beach and recreation area. Such use is consistent with the dedicated purpose and consequently is not adverse to the interests of Hollywood, Inc.

V

THE DISSENT
Chief Judge Letts has authored a lucid, penetrating dissent which deserves a direct response. Its primary theme is that the jury's multiple findings must be affirmed since they comport with the Supreme Court's decision in Hollywood, Inc. v. City of Hollywood, supra. ("Its pronouncements must be our bible... . I would affirm in toto for that reason... ." Post, at 538. "That inconsistency, if any, results from the supreme court's ... opinion... . Accordingly, I would affirm... ." Post, at 540.) We respectfully reject this assessment.
Mindful of our responsibility under Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), we have carefully reviewed the Supreme Court's opinion together with the parties original pleadings and our prior decision. We are fully satisfied that the Supreme Court never reached the question whether dedication, prescription and adverse possession are compatible or mutually exclusive. Rather, the Supreme Court merely analyzed the case prospectively with an eye toward retrial. In that context, the court remarked that the city had "several legally independent theories." 321 So.2d at 67-68. However, the court's statement was nothing more than a factual observation about the content of the city's pleadings. Of course, the court also implicitly confirmed the long-standing rule that a party may simultaneously pursue alternate claims for relief. See Rule 1.110(g), Fla.R.Civ.P.
Thus, we believe our colleague is factually in error when he suggests that the Supreme Court's opinion "approved of, and went off on, far too many theories that do not gel." Post, at 538. Whether the theories "gel"  whether dedication, prescription and adverse possession can coexist or come into being in a sequential order  was not an issue before the Supreme Court and, consequently, its opinion is not instructive on that question. On the other hand, this is precisely the issue now before us.
In analyzing the legal significance of the jury's findings, it is important to remember that the jury did not find dedication and adverse possession[3] at one and the same time. Rather, it found dedication and acceptance prior to July, 1930, and adverse possession after December, 1930, and for a period of twenty years thereafter. This crucial distinction saves the verdict from being fatally inconsistent. It seems patently obvious that a permissive use which is consistent with the dedicator's intent cannot, at the same time, be adverse to the dedicator's ownership rights. On the other hand, it is certainly within the realm of possibility for a dedicated or permissive use to become adverse if there is proof of actual *537 or constructive notice to the dedicator that the permissive user claims the property other than by dedication. It is the latter requirement for proof which places us in disagreement with our dissenting colleague who seems to take the position that with the mere passage of time, "dedication ... [is] susceptible to ultimate ripening into fee simple title." Post, at 539.
For a permissive use to become adverse possession there must be proof that the permissive user utilized the property in a manner inconsistent with the dedicated/permissive use, or, alternatively, that the permissive user notified the dedicator in a clear, positive and distinct way that it claimed title or ownership other than by dedication. Since it is certain that the city maintains the beach property in a manner consistent with the dedicated purpose, we need only consider the second possibility, i.e., clear, positive and distinct notice. Again, as stated earlier, the record contains no proof that the city notified Home Seekers Realty Company or its successor-in-title, Hollywood, Inc., that it claimed the beach property other than by dedication. Thus, as a matter of law, the proof is insufficient to support a finding of adverse possession.
The dissent's example of the silent home owner, post, at 539, is beguiling. Yet, if we add a few facts and make the home owner a non-resident landlord and the letter writer a tenant/permissive user, then the example is truly instructive and relevant to the case at bar. Despite the fact that our colleague might be "chagrined," it is legally certain that if a tenant/permissive user notifies a landlord that the tenant claims a right to the property other than by the tenancy/permissive use, a landlord's silence will redound to his detriment. See Ballard v. Gilbert, 55 So.2d 723 (Fla. 1951); Kilvert v. Clark, 152 Fla. 35, 10 So.2d 795 (1942); Armstrong v. Wilcox, 57 Fla. 30, 49 So. 41, 42 (1909); Wilkins v. Pensacola City Co., 36 Fla. 36, 18 So. 20 (1895).
Finally, we wish to note our general agreement with Judge Letts' remarks post at 540, regarding Hollywood, Inc.'s recent assertion of an ability to utilize its reversionary rights to gain additional development rights for its property adjacent to Blocks 205 and C. Yet, we wish to emphasize that this issue was not before the trial court and, thus, is not properly before this court. Therefore, we expressly decline to pass upon it.
To summarize, the Supreme Court's holding in Hollywood, Inc. v. City of Hollywood did not foreclose jury consideration of the issues of deed, dedication and adverse possession. But, once the jury decided that the beach property had been dedicated and accepted prior to July, 1930, the jury could not also find adverse possession unless it found actual or constructive notice by the city. Since there was no evidence of any notice by the city, the jury's finding of adverse possession cannot be sustained.

VI

FINAL JUDGMENT & CONCLUSION
As a result of the jury's verdict, the trial court concluded that the city "is the owner in fee simple ... [of the beach property]." Inasmuch as we have determined that the jury's finding of adverse possession (which would have conveyed title in fee simple absolute[4]) cannot be sustained, we must consider the legal effect of the jury's findings of dedication and conveyance by deed. Starting with dedication, we note that such a finding does not result in a transfer of title to the property. As stated by two law review commentators:
Acceptance of a common law dedication does not pass the fee in land. The interest acquired by the municipality is generally held to be in the nature of an easement, with the public having a right of user and nothing more. The dedicator retains the fee simple title, and it is subject to the easement only as long as there is compliance with the terms of the dedication.
Note, 7 U.Fla.L.Rev. 82, 83 (1954) (footnotes omitted). See also 2 R. Boyer, Florida Real *538 Estate Transactions, Chapter 30 (1970). Thus, pursuant to dedication, the city is the perpetual holder of an easement which guarantees public access and use of the beach property.
The deed of August 24, 1927, which pertains only to Block 205 of the Hollywood Central Beach, has the same practical result as dedication though it is phrased in slightly different legal terminology. By virtue of the jury's implied finding that Block 205 was a "parkway" and thereby encompassed in the August 24, 1927 grant, we hold that the city is vested with a fee simple determinable as to that piece of property. See Richardson v. Holman, 160 Fla. 65, 33 So.2d 641 (1948). Hollywood, Inc. as the successor in interest to the grantor retains a possibility or right of reverter in Block 205. See Biltmore Village, Inc. v. Royal, 71 So.2d 727 (Fla. 1954); 22 Fla.Jur.2d Estates, Powers and Restraints, § 115, 116 (1980); Botts, Removal of Outmoded Restrictions, 8 U.Fla. L.Rev. 428, 442-446 (1955). To reiterate, these considerations merely underscore the fact that the city holds both pieces of beach property as the trustee of the public and so long as the property is used for the public's benefit the beach shall remain accessible to all.
Accordingly, the final judgment is affirmed in part and reversed in part and the cause is remanded with instructions to enter a final judgment finding that the City of Hollywood holds Block 205 of the Hollywood Central Beach by a fee simple determinable and that it holds Block C of the Hollywood Beach, second edition, as a permissive user through dedication.
ANSTEAD, J., concurs.
LETTS, C.J., dissents in part and concurs in part.
LETTS, Chief Judge, dissenting in part and concurring in part:
The difficulties I have had with this case arise not so much from judicial disagreements within this courthouse as from the Supreme Court case of Hollywood, Inc. v. City of Hollywood, supra, hereinafter referred to as the Hollywood opinion. To me the Hollywood opinion approved of, and went off on, far too many theories that do not gel. Nonetheless its pronouncements must be our bible and I cannot now fault the trial judge, the lawyers or the jury for the results reached. I would affirm in toto for that reason, subject to the certification hereinafter stated.
I acknowledge that there may be inconsistency in finding both dedication and adverse use present at one and the same time.[1] As the Developer argues in an excellent brief, the possession by the city has been by way of a dedicated permissive easement which cannot ripen into fee simple title and has never been adverse at all.[2] Thus it is reasoned that dedication and adverse user cannot go hand in hand and are in fact incompatible.
Yet as I read and reread the supreme court's Hollywood opinion, I cannot blame the trial judge for instructing the jury on both theories nor can I hold the jury's dual findings to be reversible error. It is true that the actual holding in Hollywood appears to send the case back for a new trial principally on the issue of common law dedication. Nonetheless the opinion is replete with references to the concomitant presence of adverse possession, prescriptive rights, adverse user, quieting title under Chapter 65.061 of the Florida Statutes and "actual" possession. None of these legal words of art are found to be incompatible with dedication anywhere in the opinion and the last one, "actual possession," is of particular significance. As used in the opinion, the "actual possession" appears to be discussed in *539 the context of a suit to quiet title which the court held would be appropriate in this cause. It goes without saying that a successful quiet title suit results in a "good fee simple title." (See subparagraph [4] of the same statute.) Accordingly, I have little doubt that our Supreme Court saw no inconsistency in discussing dedication under common law and simultaneously that that dedication was susceptible to ultimate ripening into fee simple title.
As to the question of whether the property in question was in fact adversely held by the City, I disagree with the majority and find abundant evidence in the record that it was, as did the jury. I have read the transcript of the charge conference and find ample support for my earlier contention that the Hollywood opinion reads too much like a legal encyclopedia that speaks on all sides of the issue. At trial each party wanted to present jury instructions taken verbatim from the decision, over the strenuous objections from their opposite number. The Developer cogently argued at that same conference that the dedication, if any, had been revoked by the sheriff's deeds and that the only way the city could prevail would be by adverse possession.[3] Furthermore although the Developer submitted a verdict form asking the jury to find that the property was either "legally owned"[4] by the City or the Developer by way of (a) deed, or (b) dedication, or (c) prescription, it argued at the charge conference that it would be perfectly proper for the jury to "find all three ways."[5] This is the exact opposite of its contention on appeal.
The majority appears to me to decide that because there was evidence of dedication (which I agree there was), this evidence by necessity dissolves the conflicting evidence of adverse possession. The evidence may in fact be inconsistent, but the presence of the former does not ipso facto dissolve the evidence of the latter. Further I am of the opinion that the supreme court in the Hollywood opinion conceded evidence of adverse use in this case and I note that the successor to the original developer is claiming that, (1) it owns the property by way of subsequent sheriff's deeds despite the dedication, and (2) it has written letters to the City saying that it owns the two disputed parcels, and that any right to use the beach is a mere license that may be revoked when future development plans so dictate. These claims are not consistent with a permissive grant, and in my view the record adequately demonstrates that the City considers itself in sole, final, open, notorious possession and control of the beach which it has exclusively patrolled, occupied, used and improved. Unlike the majority I do not find the failure to contradict these letters to be fatal. If someone wrote me a letter claiming that he, not I, owned my house, I would be chagrined indeed to lose it if my silence was held to be assent.
My use of the word "exclusively" in the preceding paragraph deserves further comment, because the Developer argues, in the alternative, that even if the possession is open, notorious and hostile, it is still not of the exclusive variety required for the kind of adverse possession which will ripen into fee simple title because not only the City but every member of the public enjoys access to and use of the beach. I reject this argument. The City is but an entity of the public, see Downing v. Bird, 100 So.2d 57, 61 (Fla. 1958), and it is the public which enjoys the beach to the exclusion of any intruding private interest such as that of the developer. While not stated in such express terms, I am confident that the sense and wording of the supreme court's Hollywood opinion does not envisage that the actual possession *540 by the public at large is somehow other than exclusive possession by that same public. (See discussion on page 71 of the opinion.)
I would be less than fair if I ignored authority which indicates that the form of adverse use enjoyed by the public, as distinct from an individual owner, is the kind that ripens by prescription into a perpetual easement rather than the fee simple title here awarded by the trial judge in his final judgment. See Hunt Land Holding Company v. Schramm, 121 So.2d 697 (Fla. 2d DCA 1960) and Downing v. Bird, supra. However, these two cited cases involve a ditch and a road respectively rather than a beach, which latter is better likened to a park or playing field than a mere right-of-way. Moreover, there is authority which suggests that a public entity can obtain fee simple title by adverse possession. See Kelley v. City of Cocoa, 188 So.2d 862 (Fla. 4th DCA 1966); and Levering v. City of Tarpon Springs, 92 So.2d 638 (Fla. 1957); and Kramer v. City of Lakeland, 38 So.2d 126 (Fla. 1949). I ascribe to this authority. As Professor Boyer points out, "there is no rule prohibiting the state or its agencies from acquiring a title by adverse possession." 2 R. Boyer, Real Estate Transactions 814 (1979). He also notes that for adverse possession to occur "the acts of ownership and occupancy must be sufficient to hoist the claimant's Jolly Roger over the land so that all may observe it." Boyer, Id. 809. There is evidence a plenty in the record that the City flew its flag high over this beach with every intention of repelling all who would commercially exploit it or lay claim to any use of it, other than as fellow members of the public.
As an aside, but in answer to a claim laid down in the Developer's brief, I do not perceive that the distinction between the City obtaining a prescriptive easement by adverse use and a fee simple title by adverse possession, would make any difference to the bottom line result in this case. The successor Developer argues in its reply brief that if it, as distinct from the City, is a fee owner, it can still at this late stage, some 50 years on, utilize the beach acreage to calculate zoning density and required open space in connection with development of its contiguous properties. The specific zoning regulations of Hollywood are not before us, but I would be surprised if the regulations would, without a quid pro quo or a retention of a right to do so, permit a developer to return to the scene and enjoy such a double dipping 50 years after he had already dedicated the property as a public beach.
The jury made two findings in this case. The first was a dedication to the City and the second a finding of adverse possession by the City. In my view there was plenty of evidence as to both, yet the majority opinion has chosen one over the other. Common sense dictates that the jury's verdict really was a finding that the beach belongs to the City not the developer regardless of the possible inconsistent "legalese" involved.
Accordingly, I would uphold the finding of adverse user and at long last have an end to this case after fifteen years of struggle, subject only to the certification hereafter suggested. As it stands now the majority has not disposed of the controversy by a long chalk and another endless battle will be joined over whether the developer can use the open space of the beach to calculate its density per acre on its adjoining properties.
To me the problem here is not insufficiency of the evidence but possible inconsistency in the verdicts. That inconsistency, if any, results from the supreme court's Hollywood opinion, for which I cannot fault the lawyers or the trial judge. Accordingly, I would affirm and certify the following question to the supreme court:
IS THE JURY FINDING OF COMMON LAW DEDICATION INCOMPATIBLE WITH EITHER, THE FINDING OF ADVERSE USE, OR THE FINAL JUDGMENT AWARD OF FEE SIMPLE TITLE, UNDER THE FACTS STATED AND THE LAW POSTULATED IN THE CASE OF HOLLYWOOD, INC. v. CITY OF HOLLYWOOD, 321 So.2d 65 (Fla. 1975)?
*541 This case cries out for such a certification. The matter is of extraordinary public importance and the holding in the Hollywood opinion is confusing at best and inconsistent at worst.
NOTES
[1] Hollywood, Inc. v. Markham, 182 So.2d 503 (Fla. 2d DCA), cert. denied, 188 So.2d 815 (Fla. 1966); City of Hollywood v. Central Council of Improvement Associations of Hollywood, Inc., 232 So.2d 769 (Fla. 4th DCA), cert. denied sub nom. City of Hollywood v. Hollywood, Inc., 238 So.2d 111 (Fla. 1970); City of Hollywood v. Zinkil, 235 So.2d 70 (Fla. 4th DCA 1970); City of Hollywood v. Zinkil, 283 So.2d 581 (Fla. 4th DCA 1973), quashed in part and remanded sub nom. Hollywood, Inc. v. City of Hollywood, 321 So.2d 65 (Fla. 1975); Hollywood, Inc. v. Zinkil, 339 So.2d 1190 (Fla. 4th DCA 1976), cert. denied sub nom. Hollywood, Inc. v. City of Hollywood, 348 So.2d 948 (Fla.), cert. denied, 434 U.S. 997, 98 S.Ct. 635, 54 L.Ed.2d 491 (1977).
[2] Although the Supreme Court characterized the city's various theories as "legally independent," it is clear that the city never attached significance to the distinction between adverse possession and prescription. The best example of the city's attitude is found in the following statement by its attorney at the charge conference following the second trial: "I think, when you say `prescription and adverse possession,' they are interchangeable." (Tr. 1147). This of course, is not correct, (see Downing v. Bird, 100 So.2d 57 (Fla. 1958), but it demonstrates that the city was not concerned with the issue of "title"; rather, its paramount concern was "use"  the preservation of the public's right to perpetual and uninterrupted use of the beach property. From the outset in 1964 when the city filed its cross-claim against Hollywood, Inc. it recognized that Hollywood, Inc. may have acquired reversionary rights in the property. This possibility, however, has never been deemed significant by the city. Indeed, this point is best made by the city's brief filed in this court:

The CITY is aware that in the event of dedication or prescription, the CITY'S interest is an easement, an incorporeal hereditament, as distinguished from title, a corporeal right. Downing v. Bird, 100 So.2d 57 (Fla. 1958). As a practical matter, it makes little difference.
....
HOLLYWOOD, INC. contends that the final judgment below is erroneous even if the CITY did prove dedication prior to 1930 because dedication does not vest the CITY with fee simple title. If the CITY proved ownership by adverse possession this question is moot. On the other hand if the CITY proved dedication the type of title it receives is of little or no practical significance. The use and purpose of the land is public beach:  Any contention that the CITY may someday attempt the [sic] sell the land borders on the ludicrous. Courts will still be open to the citizens in the event their elected officials ever attempted to oust them of their beautiful public beach  an asset of such magnitude that deprivation thereof would seriously impair the present and future attractiveness of their CITY.
[3] Although the jury's verdict speaks in terms of "adverse use," an element common to both adverse possession and prescription, the city argued to the jury and requested instructions on adverse possession. See footnote 2 for further explanation. Thus, we take the jury's response to question # 3 on the special verdict to be a finding of adverse possession. The parties have also taken this position in arguing the case on appeal.
[4] Downing v. Bird, 100 So.2d 57 (Fla. 1958).
[1] See 2 R. Boyer, Florida Real Estate Transactions, Chapter 30 (1979).
[2] I have not ignored the Developer's claim that the dedication of one of the Blocks by deed, as distinct from platting, was for the use of the beach as a "parkway." However, circa 1930 a parkway was not necessarily a multi-laned road with a divider strip. See Cobb v. Milwaukee, 60 Wis.2d 99, 208 N.W.2d 848 (1973).
[3] The majority has here found the exact opposite.
[4] The term "legally owned" is itself a choice of language which raises all sorts of interesting nuances.
[5] "COUNSEL FOR DEVELOPER: If you want to say, `And/or,' so they could find all three ways  I agree with you that they could, and I wasn't intending to say it has to be one or the other.

THE COURT: And all you have to do is: After `upon' would be to type 
COUNSEL FOR DEVELOPER: `Deed and/or dedication.'"