The Honorable Sharon Outland St. Johns County Property Appraiser County Service Center 4030 Lewis Speedway, Suite 203 So. Augustine, Florida 32084
Dear Ms. Outland:
You have asked substantially the following questions in light of passage of Chapter 2003-284, Laws of Florida, relating to ad valorem and non-ad valorem assessments against common elements in a subdivision:
1. Does the definition of "common element" include any property in a subdivision plat or site plan intended to benefit lot owners that is not a lot either sold into private ownership or held by the developer as inventory for sale?
2. If a developer retains fee title to property that would otherwise be classified as a common element, must an assessment still be prorated among all lot owners?
3. Is Chapter 2003-284, Laws of Florida, applicable only to subdivisions platted after January 1, 2004, the effective date of the act?
4. What is the effect of the transfer of ownership of a common element to a private party?
5. What is the effect of the issuance of a tax certificate on a lot that includes a prorated share of the assessment for the common elements of the subdivision?
6. May lot owners claim ownership of the common elements under a theory of adverse possession?
Section 193.0235, Florida Statutes, created by section 4, Chapter 2003-284, Laws of Florida, provides a new statutory provision entitled "Ad valorem taxes and non-ad valorem assessments against subdivision property," which states:
"(1) Ad valorem taxes and non-ad valorem assessments shall be assessed against the lots within a platted residential subdivision and not upon the subdivision property as a whole. An ad valorem tax or non-ad valorem assessment, including a tax or assessment imposed by a county, municipality, special district, or water management district, may not be assessed separately against common elements utilized exclusively for the benefit of lot owners within the subdivision, regardless of ownership. The value of each parcel of land that is or has been part of a platted subdivision and that is designated on the plat or the approved site plan as a common element for the exclusive benefit of lot owners shall, regardless of ownership, be prorated by the property appraiser and included in the assessment of all the lots within the subdivision which constitute inventory for the developer and are intended to be conveyed or have been conveyed into private ownership for the exclusive benefit of lot owners within the subdivision. (2) As used in this section, the term `common element' includes: (a) Subdivision property not included within lots constituting inventory for the developer which are intended to be conveyed or have been conveyed into private ownership. (b) An easement through the subdivision property, not including the property described in paragraph (a), which has been dedicated to the public or retained for the benefit of the subdivision. (c) Any other part of the subdivision which has been designated on the plat or is required to be designated on the site plan as a drainage pond, or detention or retention pond, for the exclusive benefit of the subdivision."
Question One
As reflected above, a "common element" is defined in section193.0235(2), Florida Statutes, as subdivision property not included in the inventory of lots intended to be sold or that have been sold to private owners, easements that have been dedicated to the public or retained for the benefit of the subdivision, and any other part of the subdivision designated on the plat or the site plan as a drainage pond, or detention or retention pond, for the exclusive use of the subdivision. By its plain language, the statute includes as a common element any subdivision property not already sold or that is intended to be sold into private ownership, that is designated on the plat or plan as a common element. It would appear, therefore, that reference to the site plan and the subdivision plat is necessary to determine which property falls within the definition of a common element.
Question Two
The statute prohibits the separate assessment of an ad valorem tax or non-ad valorem assessment against common elements utilized exclusively for the benefit of lot owners within the subdivision, "regardless of ownership." Again, the plain language of the statute does not condition application of its provisions on the ownership of the common element. Rather, it is the intended use of the property as evidenced by the site plan or subdivision plat that will control whether assessments against the property are to be prorated among subdivision lot owners. The Florida Department of Revenue has issued a bulletin indicating that the developer is required to show an indication of intent that parcels in which the developer has maintained fee title are common elements or will be common elements.[1] The property appraiser must be able to determine that the property is used exclusively for the benefit of lot owners within the subdivision, regardless of whether the fee simple title is held by the developer.
Question Three
The effective date of Chapter 2003-284, Laws of Florida, is January 1, 2004.[2] The act on its face amends the procedures for notification of a tax deed sale relating to submerged lands and common elements located in platted subdivisions and creates a new manner of assessing taxes on common elements and specified other property utilized exclusively for the benefit of the subdivision lot owners. A review of the act's history reveals that it was intended to prevent situations where, without notification to contiguous landowners, an individual purchases a neighborhood lake or other common element at a tax sale, then offers to sell the property back to the subdivision residents at an inflated price.[3]
There is nothing in the act that excludes existing subdivisions from the protection it affords. Nor does it appear that the intent of the legislation would be fulfilled if it were applied only to subdivisions platted after the effective date of the act. To give effect to the Legislature's intent,[4] and absent any provisions to the contrary, it would appear that Chapter 2003-284, Laws of Florida, designated as section 193.0235, Florida Statutes, applies to common elements in all subdivisions, regardless of the date they were platted or planned.
Question Four
As discussed above, section 193.0235, Florida Statutes, applies only to common elements designated on a subdivision plan or plat. Should property that appears on the site plan or the plat as a common element be transferred to a third party for use other than as a common element, the property would no longer qualify to have assessments against it prorated to lot owners in the subdivision. If the property appraiser determines that the parcel is no longer a common element, the property would be returned to the tax rolls as any other lot or parcel. The Department of Revenue has advised that if the property is no longer a common element, the previously benefitted lots would go down in value and their valuations would be adjusted.[5]
The statute makes no provision for the refunding of previously assessed and collected amounts attributable to the prorated assessments on lots owned by private individuals or the developer. Whether subdivision lot owners would have a right of action against the developer is a mixed question of law and fact, dependent upon the sales contracts, subdivision covenants, and any other agreements between the developer and the lot owners. Such determination may not be made by this office.[6]
Question Five
As noted above, the intent of the act is to protect common element property from being sold due to unpaid taxes by transferring the burden and potential for sale as a result of nonpayment of assessments to lots owned by the developer and individuals. While the nonpayment of taxes or assessments imposed on an individual lot may expose that particular parcel to issuance of a tax certificate, such certificate would not appear to affect the common elements. The purchaser of a tax certificate on an individual lot would receive the same benefit from the common element as could be claimed by the previous lot owner. Thus, the prorating of assessments against common elements does not appear in any way to affect the ownership or fee title of such property, nor does it appear that after the effective date of the act such property would be subject to a tax certificate.[7]
Question Six
Section 95.16, Florida Statutes, provides a means for obtaining ownership of property through adverse possession when an occupant enters into possession of real property under a claim of title "exclusive of any other right" based on a written instrument as being a conveyance of the property, or on a decree or judgment, and has for seven years been in continued possession of the property. For purposes of the section, property is deemed possessed when it has been cultivated or improved, when it has been protected by a substantial enclosure, or when, absent an enclosure, it has been used for the supply of fuel or fencing timber for husbandry or for the ordinary use of the occupant.[8]
Section 95.18, Florida Statutes, provides for adverse possession when an occupant has been in actual continuous occupation of real property for seven years under a claim of title "exclusive of any other right," but not founded on a written instrument, judgment or decree. The statute further requires that the person claiming adverse possession have "made a return of the property by proper legal description to the property appraiser of the county where it is located within 1 year after entering into possession and ha[ve] subsequently paid all taxes and matured installments of special improvement liens levied against the property by the state, county, and municipality."[9] For purposes of this section property is deemed to be possessed "in the following cases only: (a) When it has been protected by substantial enclosure[;] [and] (b) When it has been usually cultivated or improved."[10]
The specific terms of the above sections would have to be met before an individual may be able to claim adverse possession of the common elements of a subdivision. The circumstances under which a parcel of real property is deemed to be "possessed" for both sections 95.16 and 95.18, Florida Statutes, do not appear probable where assessments for common elements of a subdivision are prorated among subdivision lot owners under section 193.0235, Florida Statutes. Moreover, both statutes require "exclusive" possession, which a common element by definition does not allow.
The courts of this state have found that possession necessary to confer title under a claim of adverse possession must be actual, continuous and adverse to the legal title for the full statutorily prescribed period of seven years.[11] While in the instant situation legal title may be held by the developer, such property is designated as common elements to the subdivision. Use of the common elements by the lot owners for whose benefit the property has been designated in a manner consistent with its intended purpose would not appear capable of being characterized as adverse possession.[12]
Sincerely,
Charlie Crist Attorney General
[1] Department of Revenue Bulletin PTA-03-01 (House Bill 1721).
[2] Section 5, Ch. 2003-284, Laws of Fla.
[3] See House of Representatives Staff Analysis, HB 1721, April 22, 2003.
[4] See Ervin v. Peninsular Telephone Company, 53 So.2d 647
(Fla. 1951) (Supreme Court has duty in construction of statutes to ascertain Legislature's intention and effectuate it); State v. Webb, 398 So.2d 820 (Fla. 1981) (legislative intent is the polestar by which the courts must be guided); Ops. Att'y Gen. Fla. 94-37 (1994) (paramount rule of statutory construction is to ascertain the intent of the Legislature), 86-24 (1986), and 85-74 (1985) (legislative intent is the polestar by which a court must be guided in interpreting statutory provisions).
[5] See Dept. of Revenue Bulletin PTA-03-01 (House Bill 1721).
[6] Cf., Op. Att'y Gen. Fla. 99-12 (1999) (determination of legal status of real property held by a condominium association must be made by referring to the declaration of condominium and other documents creating the condominium and delineating the rights of the parties involved).
[7] Department of Revenue Bulletin PTA-03-01 (House Bill 1721).
[8] Section 95.16(2), Fla. Stat.
[9] Section 95.18(1), Fla. Stat.
[10] Section 95.18(2), Fla. Stat.
[11] See Dallam v. Sanchez, 56 Fla. 779, 47 So. 871 (Fla. 1908) and Hyer v. Griffin, 55 Fla. 560, 46 So. 635 (Fla. 1908).
[12] Cf., Hollywood, Inc. v. Zinkil, 403 So.2d 528, 529 (Fla. 4th DCA 1981) ([a]cceptance of dedication by city and continued maintenance of land as beach and recreation area was consistent with dedicated purpose and was not adverse to interests of rightful owner).